735 F.Supp. 333 (1990)
Karen CLARK, Plaintiff,
v.
CITY OF LAKE ST. LOUIS, et al., Defendants.
No. 89-1657C(1).
United States District Court, E.D. Missouri, E.D.
April 23, 1990.
*334 David Godfrey, Clayton, Mo., for plaintiff.
Robert Krehbiel, Evans & Dixon, St. Louis, Mo., for Lake St. Louis.
Ben Ely, Jr., Kortenhof & Ely, St. Louis, Mo., for Ron Gann.
F. Douglas O'Leary, Moser & Marsalok, St. Louis, Mo., for John Selby.

MEMORANDUM
NANGLE, Chief Judge.
This matter is before the Court on defendant Lake St. Louis' motion for summary judgment, which contends that as a municipality, Lake St. Louis cannot be held liable under 42 U.S.C. § 1983 for the acts by its employees which plaintiff contends violated her constitutional rights. The complaint alleges that on October 10, 1986, plaintiff was arrested and held at the Lake St. Louis police station by defendant Selby, the Lake St. Louis Chief of Police, and defendant Gann, a Lake St. Louis police officer, until she paid an alleged debt of $5,000.00 to a Doug Niemier. (Count I, ¶ 8.) Plaintiff further alleges that on October 13, 1986, defendant Gann appeared at her home and ordered her, under threat of arrest, to pay $700.00 cash to defendant Selby at the Lake St. Louis police station. (Count II, ¶ 2.) Plaintiff further alleges that on October 10, 1986, and thereafter defendants Gann and Selby ordered plaintiff to leave her place of business, threatening her with arrest if she returned. (Count III, ¶ 2.) Lastly, plaintiff alleges that threats, intimidation and harassment by defendants Selby and Gann forced her to move from Lake St. Louis. (Count IV, ¶ 2.) Plaintiff's proffered bases for Lake St. Louis' liability for these acts are (1) that Selby, as Chief of Police, had final policymaking authority in police matters, so that his acts are chargeable to the city, and (2) that the city's failure to train Selby and Gann caused the acts complained of and warrants the imposition of liability on the city itself.
Plaintiff makes constitutional claims based on the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution. As a threshold matter, the Court finds that plaintiff fails to state claims under the Fifth, Sixth and Eighth Amendments. The Fifth Amendment is applicable only to the federal government, not the states or their political subdivisions. Warren v. Government National Mortgage Assn., 611 F.2d 1229, 1232 (8th Cir. 1980). The Sixth Amendment by its terms relates to the rights of an accused in a criminal prosecution. Similarly, the Eighth Amendment, which concerns excessive bail and fines, and cruel and unusual punishments, does not apply. Plaintiff has cast her claims in terms of unreasonable seizure and due process, so that only the Fourth *335 and Fourteenth Amendments are properly invoked on her behalf. The Court then sua sponte dismisses, as against all defendants, plaintiff's claims under the Fifth, Sixth and Eighth Amendments. Wright & Miller, Federal Practice & Procedure, § 1357, p. 593 (1969).
In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R. Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
The Supreme Court has recently provided a helpful synopsis of the law concerning municipal liability under § 1983 based on the acts of policymakers:
Last Term in St. Louis v. Praprotnik, 485 U.S. 112 [108 S.Ct. 915, 99 L.Ed.2d 107] (1988), ... we attempted a clarification of tools a federal court should employ in determining where policymaking authority lies for purposes of § 1983. In Praprotnik, the plurality reaffirmed the teachings of our prior cases to the effect that "whether a particular official has `final policymaking authority' is a question of state law." Id. at 123 [108 S.Ct. at 924], (emphasis in original), quoting Pembaur [v. Cincinnati], 475 U.S. [469], at 483 [106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986)] (plurality opinion). As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury. Reviewing the relevant legal materials, including state and local positive law, as well [as] "`custom or usage' having the force of law," Praprotnik, supra [485 U.S.], at 124, n. 1 [108 S.Ct. at 924, n. 1], the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, see Monell [v. New York City Dept. of Social Services], 436 U.S. [658], at 661, n. 2 [98 S.Ct. 2018, 2020, n. 2 (1978)] or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.
Jett v. Dallas Independent School District, ___ U.S. ___, ___, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989).
Lake St. Louis Ordinance No. 167, adopted November 10, 1981, captioned "An ordinance creating the department of police, establishing the office of the chief of police and prescribing the duties and powers thereof," contains the following provisions:
Section 2 General Supervision and Control
The Department shall be under the supervision of an executive officer to be known as the Chief of Police. He shall be responsible to the Mayor and Board of Alderman of the City of Lake Saint Louis for the efficient operation of the Department of Police. He shall promptly perform directives of the Mayor or Board of Alderman.
. . . . .

*336 Section 8 Position Description and Specifications of Chief of Police

The position of Chief of Police shall be an administrative and ministerial position where the employee consults with the Mayor and the Board of Alderman of the City of Lake Saint Louis in determining plans and policies to be observed in the conduct of police operations.

. . . . .
Section 9 Duties and Responsibilities
. . . . .
d) The Police Chief shall be responsible for and have the authority to formulate, promulgate and enforce Department policies, procedures, regulations, personnel and equipment specifications, not inconsistent with the laws or ordinances of the Missouri State Statutes and federal laws as they apply and subject to the approval of the Mayor and of [the] Board of Alderman.

Defendant City of Lake St. Louis' Exhibit A to its motion for summary judgment (emphasis added). These provisions clearly enunciate that the Police Chief must confer with and seek approval from the mayor and Board of Alderman for policies he desires to implement in the Police Department. The Court holds, in light of this statutory subjugation to higher authority, that the Police Chief is not by law the final policymaker with respect to the Lake St. Louis Police Department. Plaintiff has not made any allegations concerning Lake St. Louis' mayor or Board of Alderman.
Neither does the Court accept the argument that the pattern of events which forms the basis of plaintiff's complaint constitutes a custom or usage of the police department so ingrained as to be fairly considered standard operating procedure for which the City may be held responsible. Plaintiff has alleged "a governmental policy and custom of arresting and imprisoning individuals without probable cause or reasonable suspicion to believe the individual has committed a crime," (Count I, ¶ 10), "a governmental policy and custom of seizing upon property under the threat of arrest without due and legal process or lawful authority," (Count II, ¶ 4), "a governmental policy to subject individuals without due and legal process or lawful authority to threats of arrest if they return to their place of lawful employment," (Count III, ¶ 3), and "a governmental policy and custom to subject individuals to the dispossession of tenement and arrest and threat of arrest without due and legal process or lawful authority," (Count IV, ¶ 3). As was the Supreme Court in Praprotnik, this Court is guided by the fact that plaintiff:
does not contend that anyone in city government ever promulgated, or even articulated, such polic[ies]. Nor [does she] attempt to prove that such [harassment, etc.] was ever directed against anyone other than [her]self.
Praprotnik, 485 U.S. at 128, 108 S.Ct. at 926. The Court holds that the alleged acts of defendants Selby and Gann, even if accepted as true as described in the complaint, cannot constitute the custom of defendant Lake St. Louis for § 1983 purposes, because the allegations do not amount to "a pattern of `persistent and widespread' unconstitutional practices which became so `permanent and well settled' as to have the effect and force of law." Jane Doe "A", et al. v. The Special School District of St. Louis County, et al., 901 F.2d 642, 645-46 (8th Cir.1990), quoting Monell, 436 U.S. at 691, 98 S.Ct. at 2036.
As for municipal liability based on a failure to train police employees, the Supreme Court has very clearly held that:
[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact ... Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality  a "policy" as defined by our prior cases  can a city be liable for such a failure under § 1983 ... Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. *337 City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 1204-06, 103 L.Ed.2d 412 (1989). Plaintiff's allegations with respect to failure to train track the language of the four allegations quoted above concerning the city's "policies and customs," and amount to a claim that the city failed to train its police officers, including defendants Selby and Gann, as to the legal requirements of probable cause and due process in relation to arrests and seizures of property. Nowhere is the element of deliberate indifference or the necessary deliberate or conscious choice not to provide such training alleged. Neither has plaintiff responded to the instant motion by setting forth specific facts showing that a genuine issue of material fact exists on this point. Fed.R.Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
Having decided defendant City of Lake St. Louis is entitled to summary judgment on all of plaintiff's federal law claims, the Court lacks jurisdiction over plaintiff's state law claim against Lake St. Louis for false arrest, which no longer enjoy jurisdiction pendent to federal claims against Lake St. Louis. Finley v. United States, ___ U.S. ___, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Accordingly, the Court grants defendant City of Lake St. Louis' motion for summary judgment, and enters judgment in favor of Lake St. Louis and against plaintiff.