**Marcellino ORTEGA, Rafael Rojas, Raul Rojas, Plaintiffs–Appellants,**

v.

**C.J. SCHRAMM, indiv. & as Deputy Sheriff of Glades Co., Alex Green, indiv. & as Deputy Sheriff of Glades Co., Defendants–Appellees,**

**Marcellino ORTEGA, Rafael Rojas, Raul Rojas, Plaintiffs–Appellants,**

v.

**Russell HENDERSON—indiv. & as Sheriff of Glades Co., Bobby Burkett—as Director of Florida Hwy. Patrol, Jesse M. Evans,—indiv. & as patrolman of Fl. Hwy Patrol, Defendants–Appellees.**

Nos. 89–5819, 89–5999.

United States Court of Appeals, Eleventh Circuit.

Jan. 28, 1991.

---

Edward A. Perse, Horton, Perse & Ginsberg, Miami, Fla., Jeffrey M. Liggio, Liggio & Luckman, W. Palm Beach, Fla., for plaintiffs-appellants.

Gayle Smith Swedmark and Jennifer Parker LaVia, Parker, Skelding, Labasky & Corry, Tallahassee, Fla., for defendants-appellees.

Before TJOFLAT, Chief Judge, FAY, Circuit Judge, and HOFFMAN *, Senior District Judge.

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

PER CURIAM:

Plaintiffs-appellants brought suit against Defendants-appellees in the United States District Court for the Southern District of Florida, for injuries allegedly sustained during a search and arrest. Plaintiffs filed complaints against Defendant Russell Henderson, as Sheriff of Glades County, Florida, and against Defendants C.J. Schramm and Alan Green, both individually and as deputy sheriffs of Glades County, Florida. Plaintiffs' complaints asserted a federal cause of action under 42 U.S.C. section 1983, as well as pendent state causes of action for malicious prosecution and assault and battery. Following the plaintiffs' voluntary dismissal of the section 1983 claim against Defendant Henderson, the district court granted Henderson's motion for summary judgment on the remaining state claims on the ground that it no longer had subject matter jurisdiction over Henderson. The jury returned a verdict in favor of Plaintiffs Rafael Rojas and Raul Rojas and against Defendant Schramm on the malicious prosecution claim, and in favor of all three plaintiffs and against Defendant Schramm on the section 1983 claim. The jury returned a verdict in favor of Defendant Green on all counts. Because the jury found that Defendant Schramm did not act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the district court entered judgment notwithstanding the verdict in favor of Defendant Schramm on the malicious prosecution claim. The district court entered judgment notwithstanding the verdict in favor of Defendant Schramm on the section 1983 claim, on the ground that Schramm was entitled to eleventh amendment immunity in his official capacity as well as qualified immunity from personal liability. Plaintiffs' appeal followed. For the reasons set forth below, we AFFIRM the district court's grant of summary judgment in favor of Defendant Henderson. In addition, we AFFIRM the district court's grant of judgment notwithstanding the verdict in favor of Defendant Schramm on the state law claim for malicious prosecution. Further, we REVERSE the judgment notwithstanding the verdict on the section 1983 claim in favor of Schramm for liability in his official capacity, REVERSE the judgment notwithstanding the verdict in favor of Schramm for personal liability under section 1983, and REMAND to the district court for a trial on damages for each of these claims. Finally, we AFFIRM the verdict in favor of Defendant Green on all counts.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Raul Rojas is the lessee/operator of a Phillips 66 station in Moorhaven, Florida. The filling station operated by Rojas is located across the street from the Sheriff's Office for Glades County, Florida. Late in the day on September 16, 1983, an informant by the name of Jose Diaz entered the Sheriff's Office. Diaz was speaking in Spanish and appeared to be very excited. Unable to understand Spanish, Defendant Schramm called an interpreter who relayed Diaz' claim that he had seen the arm of a body hanging out of the trunk of a black Mercedes parked inside the Phillips 66 station operated by Rojas. Diaz also reported that he had seen a gun.

Acting upon this information, Schramm drove to the filling station and saw a black Mercedes backed into the station bay. Unable to tell if a body was in the car, Schramm returned to the Sheriff's Office and asked Defendant Green to park across from the station to monitor anyone who entered or left. Present in the station at the time were Plaintiffs Raul Rojas, Raul's brother Rafael Rojas, and Marcellino Ortega, a friend. Shortly after dark, Green witnessed Plaintiff Raul Rojas lock the front door of the filling station and secure it with a padlock from the outside. Rojas then entered the station through the bay doors, which he then closed and locked. Rojas turned on a light at the rear of the filling station office and proceeded to count the day's receipts. Plaintiffs Rafael Rojas

and Marcellino Ortega were present with Raul Rojas in the station office. All three plaintiffs were talking and drinking beer.

Suspicious of the manner in which the plaintiffs had closed the station and padlocked the station door from the outside, Schramm and Green drove to the station and demanded that plaintiffs open the station door. When the plaintiffs did not do so, Schramm used a shotgun to shoot the padlock off of the door and then entered the station with Green. Schramm and Green did not have a warrant to enter and search the filling station. Upon demanding entry to the station, neither deputy identified himself as a police officer. At no point in time did either deputy explain to the plaintiffs the reason for their forced entry and search of the filling station.

While some dispute remains about the course of events following Schramm and Green's forced entry, a number of basic facts appear uncontroverted. While Green guarded the plaintiffs at gunpoint, Schramm conducted a search of the black Mercedes and of the filling station premises. Schramm's search turned up no evidence of the body or gun alluded to by the informant, Diaz. At some point during the time in which Green was guarding the plaintiffs, Plaintiff Ortega was either pushed down or kicked in the back by Defendant Green. All three plaintiffs were handcuffed and taken to the Sheriff's Office where they were fingerprinted, photographed, and jailed for three to four hours before being released on bail. Plaintiffs were never read their rights and were never informed that they had been arrested or told why they were being held. A search of Plaintiff Oretega produced a jack knife with a brass knuckle handle. No other evidence was recovered from the search of the station.

Plaintiffs filed suit in federal court asserting a federal cause of action under 42 U.S.C. § 1983, and pendent state causes of action for malicious prosecution and assault and battery. Federal jurisdiction was asserted to exist under 28 U.S.C. § 1343. Suit was brought against Defendant Henderson in his official capacity as Sheriff of Glades County, Florida, pursuant to the Florida statute governing waiver of sovereign immunity in tort actions. Fla. Stat. § 768.28 (1985).[1] Suit was brought against Defendants Schramm and Green both individually and in their official capacities as deputy sheriffs of Glades County, Florida.

In response to Defendant Henderson's motion for summary judgment on all counts, plaintiffs voluntarily dismissed the section 1983 claim against Henderson.[2] The district court, finding that federal subject matter jurisdiction no longer existed with respect to Henderson once the section 1983 claim against him had been dismissed, granted summary judgment in favor of Henderson on the state law claims for malicious prosecution and assault and battery.[3]

---

1. The Florida statute provides, in pertinent part:

   The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

   Fla.Stat. § 768.28(9)(a) (1985).

2. The voluntary dismissal was apparently based on the theory, asserted by Henderson in his memorandum in support of his motion for summary judgment, that Florida has not waived

eleventh amendment immunity for state agents in their official capacities when sued under § 1983.

3. The order of the district court read, in pertinent part,

   no federal cause of action remains as to Defendant Henderson. Once the federal claims have been dismissed against Henderson, this Court is without jurisdiction to hear the state law claims against Henderson. *Roper v. Edwards*, 815 F.2d 1474, 1477 (11th Cir.1987). Simply put, there is no pendent party jurisdiction in federal civil rights cases under 42 U.S.C. §§ 1983, 1981 and 1982. *Aldinger v. Howard*, 427 U.S. 1, 17, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976). Once the federal subject matter jurisdiction over Defendant Russell Henderson, as Sheriff of Glades County, Florida, only, has been extinguished, this Court

The jury returned a verdict in favor of Defendant Green on all counts. The jury returned a verdict in favor of Plaintiffs Rafael Rojas and Raul Rojas and against Defendant Schramm on the state claim for malicious prosecution and in favor of all three plaintiffs and against Defendant Schramm on the federal section 1983 claim. In light of the jury's finding that Defendant Schramm's actions were not committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the district court entered judgment notwithstanding the verdict in favor of Defendant Schramm on the malicious prosecution claim in accordance with the Florida statute governing waiver of sovereign immunity.[4] Judgment notwithstanding the verdict was entered in favor of Defendant Schramm in his official capacity on the ground that the eleventh amendment bars such liability. Finally, judgment notwithstanding the verdict was entered in favor of Defendant Schramm for personal liability on the section 1983 claim, under the doctrine of qualified immunity. Plaintiffs have appealed these orders.

## II. SUMMARY JUDGMENT IN FAVOR OF DEFENDANT HENDERSON

■ The district court initially exercised its discretion to retain pendent jurisdiction over the state law claims for malicious prosecution and assault and battery against Defendant Henderson because such claims arose out of the common nucleus of operative fact giving rise to the federal civil rights claims against Henderson under section 1983. Once the plaintiffs voluntarily dismissed their section 1983 claim against Henderson, however, the district court refused to retain jurisdiction over Henderson as a pendent party to the state law claims, on the ground that there is no pendent party jurisdiction in federal civil rights cases under section 1983. Because we find that 28 U.S.C. § 1343(a)(3) (1988), which authorizes federal courts to entertain section 1983 claims, does not affirmatively allow pendent party jurisdiction, we must conclude that the district court's refusal to retain jurisdiction over Defendant Henderson was correct.

The concept of pendent party jurisdiction is closely tied to that of pendent claims. Both concepts must be analyzed first in terms of the power of a court to exercise pendent jurisdiction over a claim or party, and then with respect to that court's discretion to exercise pendent jurisdiction in a particular instance, guided by notions of fairness and judicial economy. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966). The question of pendent claim jurisdiction arises when a plaintiff who brings a federal cause of action in federal court asks that federal court to entertain a related state law claim against the same defendant. A court has the power to exercise pendent jurisdiction over claims whenever the federal claim and the state claim "derive from a common nucleus of operative fact." *Id.* at 725, 86 S.Ct. at 1138. The inquiry is most often framed in terms of whether, if "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Id.* A court has the discretion, however, to decide whether to exercise its power to retain pendent jurisdiction over a state claim; the power need not be exercised in every case where it is found to exist. *Id.* at 726, 86 S.Ct. at 1139. A court's exercise of its discretion should be guided by "considerations of judicial

cannot exercise pendent jurisdiction over the state law claims against him. *Roper*, 815 F.2d at 1477. This court is without discretion in this matter, therefore entry of summary judgment is appropriate as a matter of law.

**4.** The statute provides that,

No officer, employee, or agent of the state or of any of its subdivisions shall be held *personally* liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla.Stat. § 768.28(9)(a) (1985) (emphasis added).

economy, convenience, and fairness to litigants." *Id.*

Pendent party jurisdiction involves the distinct question of whether a nonfederal claim can serve as the basis for joining a party over whom the court has no independent basis for federal subject matter jurisdiction, simply by virtue of the fact that the nonfederal claim arises from the "common nucleus of operative fact" giving rise to the federal claim. *Aldinger v. Howard*, 427 U.S. 1, 9, 96 S.Ct. 2413, 2418, 49 L.Ed.2d 276 (1976). When pendent party jurisdiction is sought to be exercised with respect to a party over whom the federal court does not have independent subject matter jurisdiction, that court must inquire whether "by virtue of the statutory grant of subject matter jurisdiction ... Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought." *Id.* at 16, 96 S.Ct. at 2421 (emphasis in original). The correct analysis of whether pendent party jurisdiction is proper under this statutory grant of jurisdiction, therefore, focuses on whether the statute affirmatively allows pendent party jurisdiction. *Finley v. United States*, 490 U.S. 545, 553–54, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989); *see also Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1006 (8th Cir.1990); *Iron Workers Mid–South Pension Fund v. Terotechnology Corp.*, 891 F.2d 548, 551 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990); *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1295 (2nd Cir.1990); *Teledyne, Inc. v.*

*Kone Corp.*, 892 F.2d 1404, 1407 (9th Cir. 1989).

In *Finley*, the Court held that when a plaintiff sues the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (FTCA), the federal court may not exercise pendent party jurisdiction over a related state law claim against another defendant. *See* 490 U.S. at 555, 109 S.Ct. at 2010. The Court reaffirmed the established principle that the jurisdiction of the federal courts is limited; subject matter jurisdiction exists only when the "Constitution ... ha[s] given to the court the capacity to take it, *and an act of Congress ... ha[s] supplied it....* To the extent that such action is not taken, the power lies dormant." *Id.* at 548, 109 S.Ct. at 2006 (quoting *The Mayor v. Cooper*, 6 Wall. 247, 252, 18 L.Ed. 851 (1868); emphasis added by the *Finley* Court). When considering pendent party jurisdiction, the Court stated, "we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Id.*, 490 U.S. at 549, 109 S.Ct. at 2007.[5] In accordance with this principle, a federal court only has pendent party jurisdiction over a state law claim when the statute giving it jurisdiction over the related federal claim contains an *"affirmative"* grant of pendent party jurisdiction. *Id.* at 553, 109 S.Ct. at 2009 (emphasis added).

The Court provided some guidance as to whether a jurisdictional statute contains an affirmative grant of jurisdiction over pendent parties: "a grant of jurisdiction over

---

**5.** The Court stated that its holding on pendent party jurisdiction did not affect the "well established" line of pendent claim cases that are governed by *United Mine Workers*, 383 U.S. at 715, 86 S.Ct. at 1130, and its progeny. *Finley*, 490 U.S. at 549, 109 S.Ct. at 2006 ("petitioner's case is fundamentally different from *Gibbs*"). The Court implied that for a pendent claim, unlike a pendent party, it would assume that full constitutional power has been authorized by the jurisdictional statute and would construe such statutes broadly. *Id.* at 549, 109 S.Ct. at 2007. Several commentators have noted, however, that there is no analytical difference between pendent claim and pendent party jurisdiction, and speculate that *Finley* signals the end of

both doctrines. *See* Federal Courts Study Comm., 1 Working Papers and Subcomm. Rep'ts: July 1, 1990 547, 554–56 (1990) (*Finley* "threatens to eliminate pendent claim and ancillary jurisdiction"); Mengler, *The Demise of Pendent and Ancillary Jurisdiction*, 1990 B.Y.U.L. Rev. 247, 248 (1990) (*Finley* has "undermined the viability of pendent claim and ancillary jurisdiction"); Perdue, *Finley v. United States: Unstringing Pendent Jurisdiction*, 76 Va.L.Rev. 539, 540, 566–69 (1990) ("[d]espite having declared pendent claim jurisdiction to be completely lacking in statutory foundation, the Court declined to take the logical next step to limit or impair that doctrine").

claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Id.* at 556, 109 S.Ct. at 2010. Thus, the FTCA, which confers jurisdiction over "civil actions on claims against the United States," 28 U.S.C. § 1346(b), does not authorize pendent party jurisdiction, because it authorizes claims against a particular party, the United States. The Court speculated that if Congress had intended to include pendent parties in the FTCA, it would have provided language such as "civil actions on claims that include requested relief against the United States," or "civil actions in which there is a claim against the United States." *Id.* at 552, 109 S.Ct. at 2008. Furthermore, a 1948 revision of the FTCA that changed the language from "on any claim against the United States" to "civil actions on claims against the United States" was not an affirmative grant of pendent party jurisdiction. *Id.* at ——, 109 S.Ct. at 2009.

In analyzing pendent party jurisdiction with respect to section 1983 claims, we must look to 28 U.S.C. § 1343(a)(3), which authorizes federal courts to entertain section 1983 claims. Under *Finley*, therefore, the inquiry in this case must be whether Congress, when it passed section 1343(a)(3), affirmatively authorized pendent party jurisdiction.[6] Because no such affirmative grant appears in the language or legislative history of section 1343(a)(3), the federal courts have no power to exercise pendent party jurisdiction over state law claims related to section 1983 claims.

In section 1983, Congress created a private right of action for violations of federal constitutional or statutory rights: a person who has been deprived, "under color of any statute, ordinance, regulation, custom, or usage, of any State" of "rights, privileges, or immunities secured by the Constitution and laws," may sue the person who has "subject[ed], or cause[d him] to be subjected" to that deprivation. 42 U.S.C. § 1983. Congress authorized federal courts to hear section 1983 suits in section 1343(a)(3), which gives the federal courts jurisdiction over "any civil action authorized by law to be commenced by any person" to "redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution."[7]

Nothing in the language of section 1343(a)(3) indicates that Congress intended affirmatively to grant subject matter jurisdiction over a state law claim against one party that is related to a section 1983 claim against another. If Congress had intended such an affirmative grant, it would have used language similar to that suggested by the *Finley* Court, 490 U.S. at 552, 109 S.Ct. at 2008, or it would have adopted a clause similar to 28 U.S.C. § 1338(b), which gives the federal courts jurisdiction over "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, pat-

---

**6.** We note that it may be possible to read *Finley* narrowly, as applying only to claims under the FTCA. The language of the opinion itself and the interpretations of commentators and courts, however, strongly suggest that *Finley* applies to pendent party jurisdiction on claims related to any federal cause of action. *See, e.g.,* 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3567.2 & n. 38 (2nd ed. 1975 & Supp.1990) ("this reading of *Finley* [limiting it to the FTCA] would be too narrow"); Federal Courts Study Comm., *supra* note 5, at 547, 554 ("[w]hile technically limited to suits based on the FTCA, the Court's rationale may prohibit any exercise of pendent party jurisdiction"); Mengler, *supra* note 5, at 248 (the "rationale undoubtedly signals an end to pendent party jurisdiction"); Perdue, *supra* note 5, at 540 (the

Court used "broad language that could potentially invalidate all pendent-party jurisdiction absent explicit statutory authority"); *Staffer v. Bouchard Transp. Co.,* 878 F.2d 638, 643 n. 5 (2nd Cir.1989) (stating in dicta that "pendent-party jurisdiction apparently is no longer a viable concept").

**7.** The federal courts also may have jurisdiction over section 1983 claims under 28 U.S.C. § 1331, which gives them jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Because a state law claim cannot arise under the Constitution or laws of the United States, section 1331 provides no affirmative grant of pendent party jurisdiction. *See Hall Am. Center Assocs. Ltd. Partnership v. Dick,* 726 F.Supp. 1083, 1101 (E.D.Mich.1989).

ent, plant variety protection, or trade-mark laws." [8]

Under *Finley,* "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." 490 U.S. at 556, 109 S.Ct. at 2010. Section 1343 is such a grant. Just as the plain language of the FTCA convinces us that Congress intended to limit federal court jurisdiction under that Act to the United States, so the plain language of section 1343(a)(3), especially when read in conjunction with section 1983, indicates that Congress intended to limit federal court jurisdiction to parties sued under section 1983. Section 1343(a)(3) gives federal courts jurisdiction only over actions to redress the deprivation of federal constitutional or statutory rights under color of state law. This language limits federal court jurisdiction to claims against parties who have caused such a deprivation. *See Grier v. Galinac,* 740 F.Supp. 338, 340, *summary judgment granted,* 745 F.Supp. 1058 (M.D.Pa.1990); Perdue, *supra* note 5, at 570 n. 177. Furthermore, section 1343(a)(3) gives jurisdiction only over actions "authorized by law to be commenced." Section 1983 authorizes only actions against persons who "subject [others] or cause [them] to be subjected" to deprivations of federal constitutional or statutory rights under color of state law. *Cf. Lockard v. Missouri Pac. R.R. Co.,* 894 F.2d 299, 302 (8th Cir.) (stating that because the Federal Employers' Liability Act, 45 U.S.C. §§ 51, 56 (1988), "accomplishes in two steps what the FTCA accomplishes in one: a grant of jurisdiction over claims involving particular parties," the Act does not authorize pendent party jurisdiction), *cert. de-*

nied, — U.S. —, 111 S.Ct. 134, 112 L.Ed.2d 102 (1990).

The legislative history of section 1343(a)(3) also contains no indication that Congress intended affirmatively to grant federal courts jurisdiction over state law claims against one party when the claims are related to section 1983 claims against another. Indeed, the legislative history of the amendments to sections 1983 and 1343 in 1979, which authorized suits under section 1983 against parties who violate the federal constitution or laws under color of the laws of the District of Columbia and gave the federal courts jurisdiction over such suits, supports the view that section 1343(a)(3)'s jurisdictional grant is limited to particular parties. The legislative history of the amendment to section 1983 states that section 1983 "created a right of action in Federal court against local government officials who deprive citizens of their constitutional rights by failing to enforce the law, or by unfair and unequal enforcement"; the purpose of the amendment was "to allow civil suits under [section 1983] against any person who, acting under the authority of the laws of the District of Columbia, deprives another" of federal rights. H.R.Rep. No. 96–548, Pub.L. No. 96–170, 93 Stat. 1284, *reprinted in* 1979 U.S.Cong. and Admin.News 2609, 2609. The amendment to section 1343(a)(3) "ma[de] it clear that the Federal courts shall have jurisdiction of Section 1983 actions against District of Columbia officials acting under authority of local laws." *Id.* at 2611.

Moreover, the 1948 amendment to the original version of section 1343(a)(3), which replaced language giving the federal courts

---

**8.** 28 U.S.C. § 1441(c) (as amended by the Federal Courts Study Committee Implementation Act of 1990, Pub.L. No. 101–650, § 312, 104 Stat. 5089, 5114), which provides that

> [w]henever a separate and independent claim or cause of action, within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein,

might be another affirmative grant of pendent party jurisdiction. *See* 13B C. Wright, A. Miller

& E. Cooper, *supra* note 6, § 3567.2 n. 38; *Carter v. Dixon,* 727 F.Supp. 478, 480 (N.D.Ill.1990) (allowing jurisdiction over a pendent party claim joined to a section 1983 claim and removed to federal court pursuant to section 1441(c)). *But see Perkins v. Halex Co. Div. of Scott Fetzer,* 744 F.Supp. 169, 175–76 (N.D.Ohio 1990) (criticizing *Carter* for applying the "expressly negated" test and finding no affirmative grant of jurisdiction in section 1441(c)); Federal Courts Study Comm., *supra* note 5, at 554 ("none of the existing jurisdictional statutes expressly confers ... authority" to hear pendent claims).

jurisdiction over "all suits at law and equity" authorized to be brought to redress constitutional violations, 28 U.S.C. § 41(14) (1940), with language giving jurisdiction over "any civil action," Act of June 25, 1948, ch. 646, § 1343(3), 62 Stat. 869, 932 (codified at 28 U.S.C. § 1343(a)(3)), was not an affirmative grant of pendent party jurisdiction. At least one court and commentator have argued that the phrase "any civil action" is such an affirmative grant. *See Teledyne*, 892 F.2d at 1409; Freer, *A Principled Statutory Approach to Supplemental Jurisdiction*, 1987 Duke L.J. 34, 56–58; *see also Finley*, 490 U.S. at 570–71 n. 25, 109 S.Ct. at 2018–19 n. 25 (Stevens, J., dissenting). The legislative history to the 1948 amendment, however, suggests that Congress used the term "civil action" only in order to conform Title 28 to the language of Rule 2 of the newly adopted Federal Rules of Civil Procedure, which merged actions at law and in equity into "one form of action to be known as 'civil action.'" *Finley*, 490 U.S. at 554–55, 109 S.Ct. at 2009 (quoting Fed.R.Civ.P. 2; citing H.R.Rep. No. 308, 80th Cong., 1st Sess., App. A114–A125 (1947) (Reviser's Notes)); *see also* Mengler, *supra* note 5, at 263–65 ("it is wrong to attribute any jurisdictional significance" to this change). In addition, Congress adopted 28 U.S.C. § 1338 when it amended section 1343(a)(3), and section 1338 contained an explicit grant of pendent jurisdiction, *see supra* at 690. It is doubtful that Congress would expressly grant pendent jurisdiction in one statute while "obliquely" granting it with the words "civil action" in another. *See* Mengler, *supra* note 5, at 261–62, 264–65 ("By its action in 1948, ... Congress demonstrated that it knows how to authorize, in

precise language, jurisdiction over state law claims.").

As yet, only two opinions from the United States Circuit Courts of Appeals interpret *Finley*'s effect on pendent party jurisdiction under sections 1983 and 1343(a)(3). The Sixth Circuit, in *Stallworth v. City of Cleveland*, 893 F.2d 830, 836–38 (6th Cir. 1990), considered whether it had jurisdiction over a state law loss of consortium claim against city officials brought by the husband of a woman who was suing the officials under section 1983. The court found that section 1983 did not reach the state law claim, as this claim did not involve "an injury based on a deprivation of the [plaintiff's] rights, privileges, and immunities." *Id.* at 838; *see also Powell v. Gardner*, 891 F.2d 1039, 1047 (2nd Cir. 1989) (not mentioning *Finley* but finding no pendent party jurisdiction on a claim related to a section 1983 claim).

The First Circuit, in *Rodriguez v. Comas*, 888 F.2d 899, 905–06 (1st Cir.1989), reached the opposite conclusion.[9] Considering a wife's claim for emotional distress based on the false arrest of her husband, who sued the responsible officials under section 1983, the court held that section 1343 allowed pendent party jurisdiction. It reasoned that because the state law claims "track[ed] the concerns that govern section 1983," allowing pendent party jurisdiction under that statute would help to fulfill its objectives. *Id.* at 905. Furthermore, it pointed out that the language of section 1343 is "very different" from the language of the FTCA analyzed in *Finley*: "In contrast to the very limited scope of jurisdiction found on the face of [the FTCA], the

---

**9.** The United States Circuit Courts of Appeals, in assessing after *Finley* whether Congess has affirmatively authorized the exercise of pendent party jurisdiction on state law claims related to other federal causes of action, have reached differing results, according to their differing interpretations of the language and purpose of the jurisdictional grant involved. *Compare Alumax Mill Prods.*, 912 F.2d at 1005–07 (no affirmative grant of pendent party jurisdiction in Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1988)); *Lockard*, 894 F.2d at 301–02 (no affirmative grant of pendent party jurisdiction in Federal Employ-

ers' Liability Act. 45 U.S.C. §§ 51–60 (1988)); *Iron Workers Pension Fund*, 891 F.2d at 550–51 (no affirmative grant of pendent party jurisdiction in Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1988)) *with Roco Carriers*, 899 F.2d at 1295–97 (pendent party jurisdiction allowed in admiralty cases, under the language of 28 U.S.C. § 1333(1) granting jurisdiction over "civil case[s] of admiralty ... jurisdiction"); *Teledyne*, 892 F.2d at 1407–08 (pendent party jurisdiction allowed under the removal provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(a), 1441(d)).

jurisdictional statute here is open-ended—applying to any person and over any civil action." *Id.* at 906. Again, we disagree. The open-ended language of section 1343(a)(3) emphasized by the First Circuit ("any civil action ... by any person") is expressly limited by section 1343(a)(3) itself, and by the language "authorized by law to be commenced" read in conjunction with the authorization of section 1983.[10]

Because section 1343(a)(3) contains no affirmative grant of pendent party jurisdiction in section 1983 cases, the district court's conclusion that it had no jurisdiction over the state law claims against Henderson was correct.[11] Accordingly, we AFFIRM the district court's grant of summary judgement in favor of Defendant Henderson for lack of subject matter jurisdiction.[12]

## III. JNOV IN FAVOR OF DEFENDANT SCHRAMM

The district court entered judgment notwithstanding the verdict in favor of Defendant Schramm on three separate claims: the state law claim for malicious prosecution, the claim under 42 U.S.C. § 1983 against Schramm in his official capacity, and the claim under section 1983 against Schramm for personal liability.

### A. State law claim for malicious prosecution

■ The jury found in favor of Plaintiffs Rafael Rojas and Raul Rojas and against Defendant Schramm on the state law claim for malicious prosecution. Judgment notwithstanding the verdict was entered in favor of Defendant Schramm in light of the jury's finding that Schramm did not act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The Florida statute governing waiver of sovereign immunity provides that a state officer cannot be held personally liable in tort unless such officer acted in bad faith. Fla.Stat. § 768.28(9)(a) (1985). Defendant Schramm cannot be held personally liable for malicious prosecution under state law, therefore, absent a finding of bad faith. Further, Schramm cannot be held liable for malicious prosecution in his official capacity, in light of the jury's finding that he did not act with malicious intent. Accordingly,

10. A review of decisions from the United States District Courts reveals a great deal of confusion over the effect of *Finley* on pendent party jurisdiction over state law claims in section 1983 cases; many continue to apply the *Aldinger* test to inquire whether sections 1983 and 1343 expressly or by implication forbid pendent party claims. A majority, however, conclude that under *Finley* they have no power to adjudicate such claims. *See, e.g., Coffman v. Wilson Police Dep't,* 739 F.Supp. 257, 267–68 (E.D.Pa.1990); *Soucie v. County of Monroe,* 736 F.Supp. 33, 38 (W.D.N.Y 1990); *Clark v. City of Lake St. Louis,* 735 F.Supp. 333, 337 (E.D.Mo.1990); *Reid v. City of New York,* 736 F.Supp. 21, 27 (E.D.N.Y. 1990). *But see, e.g., Figueroa v. Molina,* 725 F.Supp. 651, 655 (D.P.R.1989); *Johnson v. City of Chico,* 725 F.Supp. 1097, 1101–02 (E.D.Cal. 1989).

11. We recognize that this decision may prevent the plaintiffs from recovering on their state law claims against Defendant Henderson because the Florida statute of limitations on their state law claims may have run. Fla.Stat. § 95.11(3)(*o*) (1989). We note, however, that plaintiffs' counsel voluntarily abandoned any section 1983 claim against Henderson. In addition, plaintiffs' counsel did not advance any argument that Henderson should remain sub-

ject to the jurisdiction of the district court by virtue of Florida statute § 768.28(9)(a), *supra* note 1. Because that statute effectively provides that Henderson is the only proper defendant in a suit to redress injury committed by a state agent, jurisdiction may have been retained over Henderson under an indispensable party theory. We do not, however, address that argument here.

12. We note that Congress recently has codified pendent and ancillary jurisdiction over both claims and parties in most circumstances:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.*

Federal Courts Study Committee Implementation Act of 1990, Pub.L. No. 101–650, § 310(a), 104 Stat. 5089, 5113 (to be codified at 28 U.S.C. § 1367(a)) (emphasis added). We do not consider this statute in our decision because it applies only to actions "commenced on or after the date of [its] enactment." *Id.* § 310(b).

we AFFIRM the judgment notwithstanding the verdict in favor of Defendant Schramm on the state law claim for malicious prosecution.

### B. *42 U.S.C. § 1983 claim against Defendant Schramm in his official capacity*

The jury found in favor of Plaintiffs Marcellino Ortega, Rafael Rojas, and Raul Rojas and against Defendant Schramm in his official capacity for the claim under 42 U.S.C. § 1983. The district court then entered judgment notwithstanding the verdict in favor of Defendant Schramm in his official capacity, on the ground that the eleventh amendment bars such liability. This circuit has held, however, that the eleventh amendment does not protect Florida sheriffs from liability under section 1983. *Hufford v. Rodgers*, 912 F.2d 1338–1342 (11th Cir.1990). Defendant Schramm, as deputy sheriff of Glades County, Florida, is therefore not immune in his official capacity from suits brought against him in his official capacity under 42 U.S.C. § 1983. Accordingly, we REVERSE the judgment notwithstanding the verdict in favor of Defendant Schramm in his official capacity on the section 1983 claim, and REMAND to the district court for a trial on damages.

### C. *42 U.S.C. § 1983 claim against Defendant Schramm for personal liability*

The jury found in favor of Plaintiffs Marcellino Ortega, Rafael Rojas, and Raul Rojas and against Defendant Schramm on the claim under 42 U.S.C. § 1983. The district court then entered judgment notwithstanding the verdict in favor of Defendant Schramm for personal liability under the doctrine of qualified immunity. In support of this order, the district court concluded that there had been no showing of excessive force when analyzed under the fourth amendment "reasonableness" standard. (Order directing judgment notwithstanding the verdict, R. 2–80) (citing *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Our standard of review in reviewing an order of the district court for judgment notwithstanding the verdict is the same as that used by the district court in determining whether or not to grant a judgment notwithstanding the verdict in the first instance. *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir.1990). That standard has been articulated as follows:

> *All* of the evidence presented at trial must be considered "in the light and with all reasonable inferences most favorable to the party opposed to the motion." A motion for judgment n.o.v. should be granted only where "reasonable [people] could not arrive at a contrary verdict...." Where substantial conflicting evidence is presented such that reasonable people "in the exercise of impartial judgment might reach different conclusion, [sic]" the motion should be denied.

*Id.* (quoting *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir.1988)) (emphasis in original). Taking all of the evidence presented here in the light most favorable to the plaintiffs, we cannot agree with the district court that reasonable people could not have found that Defendant Schramm's conduct rose to the level of excessive force necessary to support a cause of action under 42 U.S.C. § 1983.

All claims of excessive force against law enforcement officers "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 109 S.Ct. at 1871 (rejecting analysis for such claims under a more generalized "substantive due process" approach). Analysis of excessive force claims under the "reasonableness" standard of the Fourth Amendment requires a court to balance "the nature and quality of the intrusion on the individual's fourth amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Graham*, 109 S.Ct. at 1871 (quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)); *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (quot-

ing *Place,* 462 U.S. at 703, 103 S.Ct. at 2642)).

A balancing of the extent of an intrusion against the need for that intrusion necessarily requires an evaluation of how a seizure is carried out. *Garner,* 471 U.S. at 7–8, 105 S.Ct. at 1699–1700. Such a balancing recognizes that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 109 S.Ct. at 1871 (citing *Terry v. Ohio,* 392 U.S. 1, 22–27, 88 S.Ct. 1868, 1880–1883, 20 L.Ed.2d 889 (1968)). Factors bearing on this analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1872. While the reasonableness of the use of force in a particular case "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, reasonableness is judged according to an objective standard. *Id.* Thus, the question is whether the officer's actions were "objectively reasonable" under the totality of circumstances without regard to their underlying intent. *Id.*

Clearly, when the evidence here is seen in the light most favorable to the plaintiffs, a reasonable jury could have found that Defendant Schramm's conduct on September 16, 1983 constituted excessive force in violation of plaintiffs' fourth amendment right to be free from unreasonable searches and seizures. If the plaintiffs' evidence is credited, a version of the course of events on that evening unfolds which indicates that the scope of Defendant Schramm's search of the filling station may have been found unreasonable under a fourth amendment analysis. And, in reviewing a judgment notwithstanding the verdict, the *possibility* that a reasonable jury may have found in favor of the nonmoving party is all that is necessary before such judgment will be overturned.

The plaintiffs' evidence shows that Defendant Schramm effected entry into the filling station operated by Raul Rojas by shooting the padlock off of the door with a shotgun. (R. 4–68) It is undisputed that Schramm never identified himself as a police officer when he demanded entry into the station. (R. 4–77) Although he was clothed in a police uniform and although he arrived at the filling station in a police cruiser, the plaintiffs presented evidence that they could not see who was demanding entry to the station because the station office was lighted and the exterior of the station was dark. (R. 4–86) Once inside the station, Schramm executed a warrantless search of the premises which turned up no body, gun, or any other evidence to indicate that a murder had been committed. (R. 5–194–198) Throughout the period of Schramm's search, the plaintiffs were held at gunpoint in the station office by Defendant Green. (R. 4–69) At some point following the forced entry, Plaintiff Ortega was kicked in the back by Defendant Green and fell to the floor. (R. 4–68; 4–93; 4–105)

Once Schramm had completed his search of the filling station bays, the plaintiffs were taken out to the station parking lot at gunpoint with their hands in the air. Plaintiff Ortega was dragged out of the office and put on the ground. (R. 4–79–80) When Plaintiffs Raul Rojas and Rafael Rojas requested medical assistance for Ortega, all three plaintiffs were handcuffed. (R. 4–81; 4–95) Plaintiffs had still not been informed that they were under arrest or told the reason why they were being held. (R. 4–95) Because the officers had their guns drawn, at no time did the plaintiffs do anything to threaten or argue with the officers; they only asked for medical assistance for Ortega. (R. 4–97; 4–109)

The only evidence seized as a result of the search was a jack knife with a brass knuckle handle, belonging to Plaintiff Ortega. Despite the fact that Schramm's search of the filling station and the Mercedes turned up no evidence that a crime had been committed, all three plaintiffs were handcuffed and taken to the Sheriff's Office. Without ever being told why they were being held, the plaintiffs were finger-

printed, photographed, and jailed for three to four hours. They were released only after posting bail.

There simply is no question that when the evidence is viewed in the light most favorable to the plaintiffs, it would permit a reasonable jury to conclude that Schramm acted with excessive force. In light of the evidence presented by the plaintiffs that they could not see who was demanding entry into the filling station that night, Schramm's failure to identify himself as a police officer and his use of the shotgun to gain entry, there existed a solid basis for the jury finding of excessive force. In addition, the arrest and holding of plaintiffs could have been found unreasonable in the face of plaintiffs' testimony that they did nothing to impede the officers' search of the filling station. Overall, the manner in which the warrantless search was conducted, where plaintiffs were held at gunpoint throughout and never told of the reason for the intrusion, provides ample support for the jury's finding of excessive force. Therefore, we REVERSE the judgment notwithstanding the verdict as to this claim and REMAND to the district court for a trial on damages.

## IV. JURY VERDICT IN FAVOR OF DEFENDANT GREEN AND AGAINST PLAINTIFFS ROJAS, ROJAS, AND ORTEGA

We AFFIRM the final judgment in favor of Defendant Green and against Plaintiffs Raul Rojas, Rafael Rojas, and Marcellino Ortega entered in accord with the jury verdict.

## V. CONCLUSION

In sum, we AFFIRM the district court's grant of summary judgement in favor of Defendant Henderson. We AFFIRM the district court's grant of judgement notwithstanding the verdict in favor of Defendant Schramm on the state law claim for malicious prosecution. We REVERSE the judgement notwithstanding the verdict in favor of Schramm on the section 1983 claim for liability in his official capacity, REVERSE the judgement notwithstanding the verdict in favor of Schramm for personal liability under section 1983, and REMAND to the district court for a trial on damages for each of these claims. Finally, we AFFIRM the verdict in favor of Defendant Green on all counts.