[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10917
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cv-00111-UA-SPC


MICHAEL ANDERSON,

Plaintiff-Appellant,

versus

CITY OF NAPLES,
RALPH ANTHONY,

Defendants-Appellees,

NAPLES POLICE DEPARTMENT,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 17, 2012)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Michael Anderson, pro se, filed this 42 U.S.C. § 1983 action alleging unlawful arrest and excessive force claims against Defendant-Appellees Officer Ralph Anthony and the City of Naples.  The district court granted the Defendants' motion for summary judgment.  After review, we affirm.

## I.  BACKGROUND

### A.    Disruption of Park Event

On January 15, 2007, the NAACP sponsored an event at Cambier Park in Naples, Florida to celebrate the Martin Luther King holiday.  The program included speakers and entertainment who performed on a stage in the middle of the park before an audience sitting in chairs.  Between 300 and 400 people attended the event, many of them families.[1]

Defendant Officer Anthony, who is African-American, was on duty at the park during the event.  Plaintiff Anderson, who is also African-American, attended the event wearing a full gorilla costume and a T-shirt with the words "Owned by NIGGAZZ" on it.  Anderson went to the event dressed this way to promote a hip

---

[1]"In conducting a de novo review of the district court's resolution of a summary judgment motion based on qualified immunity, we resolve all issues of material fact in favor of the plaintiff."  McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).  The facts recited here are either undisputed or are the facts provided in Anderson's sworn statement or found in his documentary evidence.  Anderson's appeal brief makes other factual allegations not found in his sworn statement or supported by other record evidence, and thus we do not include those.

hop artist named Frantz Adeclat, who goes by the professional name Gheddy. Anderson, his wife and children and Adeclat were all present at the event.

As Anderson entered the park, he noticed Officer Anthony watching him. Several event attendees testified that, during the program, Anderson, wearing the gorilla costume, walked between the stage and the audience and began acting like a gorilla, beating his chest, waving his arms and jumping around. These witnesses testified that Anderson's behavior distracted and disturbed the audience and caused children to become scared, cry and run away.[2] As a result, the event chairperson, Irene Williams, began receiving complaints from attendees that a man in a gorilla suit was scaring the children and being disruptive. Williams investigated and saw Anderson, waving his arms, repeating the word "nigger" and telling people that there was nothing wrong with the name and they needed to embrace it. Officer Anthony received similar complaints that Anderson "was disturbing the peace and frightening children in the park" and began searching for him.

One attendee, Willie Anthony (not related to Officer Anthony), confronted Anderson, asked Anderson about his behavior and the meaning of his T-shirt.

---

[2]Anderson's sworn statement does not deny that Officer Anthony received complaints from event patrons about his disruptive conduct.

Willie Anthony told Anderson he was being disrespectful to people attending the event and threatened to punch Anderson in the mouth. Williams intervened and told Anderson he needed to leave. Anderson decided to do so. As Anderson walked away, Willie Anthony shouted "get Ralph and have his ass lock[ed] up."

At Williams's urging, Willie Anthony returned to his seat. Williams called 911 and reported that someone in a gorilla suit was making a disturbance at the park. On his way back to his seat, Willie Anthony encountered Officer Anthony and complained to him about Anderson. Officer Anthony continued searching for Anderson. Meanwhile, Officer Pablo Debien, who is white, responded to Williams's 911 call. Two other event attendees who had followed Anderson out of the park showed the officers where Anderson was.

## B.    Trespass Warning

Anderson was about a block away from the park when the officers approached him. Officer Debien pulled up in front of Anderson on his bicycle. Officer Debien asked Anderson his name. Officer Anthony shouted at Anderson to remove his shirt and take off the gorilla suit. Anderson stated that it was within his rights to wear them, and Officer Anthony responded that it was within his rights to "take [his] ass to jail." Anderson then complied with Officer Anthony's request to remove the head piece.

4

Officer Anthony issued a verbal trespass warning, telling Anderson to leave the park and not return or go to jail.  When Anderson asked for a citation, the officers gave Anderson their business cards.  Anderson asked permission to get his wife and children from the park and was told he could look for them from the side road, but was not allowed back in the park.

### C.    Arrest for Breach of the Peace

Anderson waited on the side road and looked for his family.  When Anderson finally saw his family, Officer Anthony was near them.  Anderson called out to his family that he was not allowed inside the park.  Officer Anthony testified that five minutes after giving Anderson the verbal trespass warning and telling him not to return to the park, he saw Anderson standing at the edge of the park and yelling into the park at people attending the event.  At this point, Officer Anthony decided to arrest Anderson.

According to Anderson, he was speaking to a man with a camera when Officer Debien returned on his bicycle and called Anderson over.  As they spoke, Officer Anthony drove up in his patrol car and "jump[ed] [Anderson] from behind."  As Anderson's wife and two young children watched nearby, the officers "tried to throw [Anderson] face first to the ground."  While Anderson was "still trying to maintain [his] balance," he heard Officer Anthony say "[t]aser up."

5

Officer Debien placed his taser on Anderson's back. Anderson shouted, "my son[,] my son" and became compliant. Officer Debien did not use his taser. The officers placed Anderson under arrest. The officers had trouble placing handcuffs on Anderson and had to remove his gorilla gloves to do so. They also pushed Anderson's head down as they put him in the patrol car.

Photographs taken during the arrest show Anderson wearing the gorilla costume and the T-shirt, but not the gorilla mask. The photographs show the officers grabbing Anderson on each side by his arms, pulling on him, pushing him against the trunk of the patrol car, pulling his hands behind his back, placing him in handcuffs and moving him to the open back door of the patrol car. In all of the photographs, Anderson remained on his feet and in some of the photographs he appears to be yelling.

Anderson was arrested at 12:27 p.m. Officer Anthony transported Anderson to the county jail in his air-conditioned patrol car. On the way, Officer Anthony yelled at Anderson, called him "stupid, dumb ass," and said that "[n]obody could pay him 2 million dollars to wear a Gorilla suit" and that Anderson had "set black people back two hundred years." When they arrived at the jail, Officer Anthony turned the patrol car off and left Anderson in the patrol car, with the windows up and wearing the gorilla suit. Anderson said that Officer Anthony left him in the

6

hot patrol car "long enough to fear for [his] life," but did not say how much time elapsed. Officer Anthony said that he left Anderson in the patrol car for no "more than a few minutes." The afternoon high temperature on the day of Anderson's arrest was 81 degrees. Anderson got the attention of a jail deputy, who let Anderson out of the patrol car.

Anderson was booked into the jail between 12:44 and 12:59 p.m.[3] Anderson was charged with resisting arrest with violence, in violation of Florida Statutes § 843.01, and breach of the peace, in violation of Florida Statutes § 877.03. The State Attorney later dropped the charges.

## D.    Medical Treatment for Back Injury

Officers Anthony and Debien were not aware that Anderson had sustained any injuries at the time of his arrest. However, on the same day, the jail nurse treated Anderson for back pain. The nurse's report indicates that Anderson did not need a referral and that she gave him Tylenol for the pain.

Two days later, on January 17, 2007, Anderson visited the hospital, complaining of back pain from being "grabbed from behind and 'tossled' around by police three days ago." The doctor conducted a physical examination, took X-

---

[3]The jail's intake form showed that Anderson was booked into the jail at 12:44 p.m., but Officer Anthony averred in his affidavit that Anderson was booked into the jail about 12:59 p.m.

rays of Anderson's thoracic and lumbar spine and diagnosed lumbar strain and a muscle spasm. The doctor expected Anderson to improve over the next week and prescribed Anaprox DS (an anti-inflammatory) and Flexeril (a muscle relaxant).

## E.    District Court Proceedings

Anderson's complaint alleged that Officer Anthony (1) violated Anderson's First, Fourth and Fourteenth Amendment rights by arresting him; (2) violated his Fourth and Fourteenth Amendment rights by using excessive force during the arrest; (3) violated his Eighth Amendment rights after the arrest by leaving Anderson in the hot patrol car; and (4) violated his Fourteenth Amendment rights after Anderson was released from jail by writing false reports to support the criminal charges and gossiping in the community about Anderson.

The district court granted summary judgment to the Defendants on all of Anderson's claims.[4]   Relevant to this appeal, the district court found that Officer

---

[4]Plaintiff Anderson's second amended complaint did not allege any claims against the City of Naples, but did allege all claims against Officer Anthony in both his official and individual capacities. Anderson's official capacity claims against Officer Anthony are in fact municipal liability claims against the City of Naples. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 & n.55, 98 S. Ct. 2018, 2035-36 & n.55 (1978).

On appeal, Anderson argues only that the district court erred in finding that Officer Anthony was entitled to qualified immunity. This argument relates only to Anderson's individual capacity claims. See Bruce v. Beary, 498 F.3d 1232, 1249 n.33 (11th Cir. 2007) (explaining that the defense of qualified immunity is inapplicable to official capacity claims). Anderson does not mention his official capacity claims against Anthony and therefore has abandoned them. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (stating that, while we read pro se briefs liberally, a pro se litigant abandons issues that he fails to address in his appeal brief).

Anthony had arguable probable cause to arrest Anderson for breach of the peace, the operative charge at the time Office Anthony made the decision to arrest Anderson. The district court stressed that Officer Anthony had reports from event patrons that Anderson was "aggressively disturbing the patrons, scaring children, and disrupting the formal program," and Anderson returned to the park after being told he would be arrested if he did so. Because Officer Anthony had arguable probable cause, he was entitled to qualified immunity with respect to Anderson's First, Fourth and Fourteenth Amendment claims relating to his arrest.

As to Anderson's use of force claims, the district court determined that Anderson's back pain resulting from the force used during the arrest was de minimis and was insufficient to establish a Fourth Amendment claim of excessive force. The district court analyzed Anderson's post-arrest hot-car claim under the Fourteenth Amendment, rather than the Eighth Amendment, because Anderson was a pre-trial detainee. The district court found that the amount of time Officer

---

In any event, we find no reversible error in the district court's entry of summary judgment as to Anderson's official capacity claims because Anderson presented no evidence of a policy or custom of the City of Naples that was the "moving force" behind any of his alleged constitutional violations. See City of Canton, Ohio  v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989); Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc). The only municipal policy or custom Anderson ever identified was a custom of encouraging people to wear costumes during parade events. However, even under Anderson's version of events, this custom was not the "moving force" behind Officer Anthony's decision to arrest Anderson or any alleged force Officer Anthony used during or after the arrest.

9

Anthony left Anderson in the patrol car, approximately seventeen minutes between arrest and booking, was reasonable and did not shock the conscience.

## II.  DISCUSSION

On appeal, Anderson argues that the district court erred in concluding that Officer Anthony had arguable probable cause to arrest him.  Thus, Anderson contends, Officer Anthony was not entitled to qualified immunity with respect to the arrest claims and was not justified in using any force to effect the arrest.[5]

### A.  Qualified Immunity

Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  McCullough, 559 F.3d at 1205 (quotation marks omitted).  For qualified immunity to apply, the official who asserts the defense must first show that, at the time of the complained-of conduct, he was acting within his discretionary authority.  Id.  If the official does so, the burden shifts to the plaintiff

---

[5]Anderson's appeal brief does not offer any substantive legal argument as to his Fourteenth Amendment claims (Counts 5 and 6 in his second amended complaint).  See Fed. R. App. P. 28(a)(9) (requiring appellant's brief to contain argument that includes "contentions and reasons for them, with citations to authorities").  Accordingly, even construing Anderson's pro se brief liberally, his Fourteenth Amendment claims are abandoned.  See Timson, 518 F.3d at 874; Farrow v. West, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003) (stating that an appellant waives an issue for which his brief makes only a "passing reference" and does not argue the merits).

to show that qualified immunity is not appropriate. Id. Here, the parties do not dispute that Officer Anthony was acting within the scope of his discretionary authority when he arrested Anderson and took him to the jail for booking. Thus, the burden shifted to Anderson to show that Anthony was not entitled to qualified immunity.

To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the alleged violation. Id. Courts have discretion as to which prong of this inquiry to conduct first. Id. We, like the district court, begin and end our inquiry with the first prong, whether Office Anthony's arrest of Anderson violated Anderson's First and Fourth Amendment rights.

A warrantless arrest without probable cause violates the Fourth Amendment and provides the basis for a § 1983 claim. Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). Likewise, arrest in retaliation for exercising one's First Amendment rights may also provide a basis for a § 1983 claim. See Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998). However, the existence of probable cause is an absolute bar to both claims. Ortega, 85 F.3d at 1525; Redd, 140 F.3d at 1383.

Under both federal and Florida law, probable cause exists "when the facts

11

and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotation marks omitted). Even if an officer did not in fact have actual probable cause, he is still entitled to qualified immunity if he had arguable probable cause. Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003). Under the arguable-probable-cause standard, an officer can "reasonably but mistakenly conclude that probable cause is present" in light of the information the officer possessed at the time. Id. (quotation marks omitted). Whether there is arguable probable cause depends on the elements of the offense and the operative fact pattern. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137-38 (11th Cir. 2007).

Under Florida law, a person is guilty of breach of the peace if he or she "commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct." Fla. Stat. § 877.03. "[W]here the basis for an arrest under § 877.03 is speech only, the statute's application is limited" to either "words which 'by there very utterance . . . inflict

12

injury and tend to incite an immediate breach of the peace,' or to words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others." United States v. Lyons, 403 F.3d 1248, 1254 (11th Cir. 2005) (quoting in part State v. Saunders, 339 So. 2d 641, 644 (Fla. 1976)) (citations omitted).  However, "challenged conduct that involves something more than 'mere speech' remains subject to § 877.03." Id.

Here, even taking the evidence in the light most favorable to Anderson, Officer Anthony had arguable probable cause to arrest Anderson for breach of the peace.  It is undisputed that the officers were responding to a 911 call from the event chairperson, Williams, complaining that a man in a gorilla suit was disturbing the Martin Luther King Day celebration at the park.  It is also undisputed that Officer Anthony received several complaints from event attendees, including Willie Anthony, that Anderson had disrupted the program and scared children before Officer Anthony approached Anderson.  Five minutes after Officer Anthony gave Anderson a verbal trespass warning and told him not to return to the park, he saw Anderson standing at the edge of the park yelling into the park at people attending the event.  Although Anderson explains that he was merely shouting to his family, there is no evidence in the record that Officer Anthony

13

knew this.  It is what Anderson reasonably could have believed "in light of the information the officer possessed" that determines whether Anderson had arguable probable cause.  See Wood, 323 F.3d at 878 (quotation marks omitted).  Anderson also stresses that he never re-entered the park.  Anderson's focus on the park boundary ignores the undisputed fact that he went to the side road at the edge of the park and shouted to people inside the park.  Based on the totality of the circumstances, it was reasonable for Officer Anthony to believe he had probable cause to arrest Anderson for breach of the peace.

The record belies Anderson's claim that there was "no evidence" that he disturbed the event and scared children or that Officer Anthony received reports of such behavior before the arrest.  Four witnesses testified to Anderson's disruptive conduct.[6]  Two of those witnesses reported his conduct to the police, one of them, Willie Anthony, directly to Officer Anthony.  In addition, according to Officer Anthony's sworn statement and sworn arrest report, he received "numerous" complaints from attendees about Anderson's conduct before finding Anderson.

---

[6]Anderson claims he could not have disrupted the program on stage because it did not begin until after his arrest at 12:27 p.m.  Anderson's only support for this proposition is a January 13, 2007 news article indicating that the event was scheduled to begin at 11:00 a.m. with a parade to the park and that a celebration in the park would follow at 12:30 p.m.  This article, which was written two days before the event occurred, does not establish when the stage program in fact began and is insufficient to dispute the testimony of several event attendees that the stage program already had begun when Anderson appeared in his gorilla costume.

Anderson asserts that Officer Anthony arrested him "solely because" he found Anderson's gorilla costume and T-shirt with the words "Owned by NIGGAZZ" on it offensive and not because of Anderson's conduct. Even if Anderson were correct about Officer Anthony's personal motives, Officer Anthony's subjective intent is not relevant to the arguable probable cause inquiry. See Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010) ("The standard [for arguable probable cause] is an objective one and does not include an inquiry into the officer's subjective intent or beliefs."). A reasonable officer, in the same circumstances and knowing what Officer Anthony knew, could have believed that probable cause existed to arrest Anderson for breach of the peace. Because there was arguable probable cause to arrest Anderson, Officer Anthony is entitled to qualified immunity from Anderson's First and Fourth Amendment false arrest claims.

**B.    Excessive Force Claims**

The Fourth Amendment protects people from the use of excessive force during arrests. Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871 (1989). However, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Lee, 284 F.3d

15

at 1197 (quoting Graham, 490 U.S. at 396, 109 S. Ct. at 1871-72). In fact, we have recognized "that the typical arrest involves some force and injury," Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (quotation marks omitted), and that "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment," Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Graham, 490 U.S. at 396, 109 S. Ct. at 1872 (citation and quotation marks omitted).

In determining whether an officer used excessive force during an arrest, we ask "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Lee, 284 F.3d at 1197. This is an objective inquiry that excludes the officer's subjective intentions. Id. at 1198 n.7. In determining whether the officer's force was objectively reasonable, we consider the need for the application of force, the relationship between the need for the force and the amount of force used, the extent of the injury inflicted and whether the force was applied in good faith or maliciously and sadistically. Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).

Here, Anderson failed to show that Officer Anthony used anything more

16

than de minimis force to effect the arrest. Anderson averred that after Officer Anthony grabbed him from behind, both officers "tried to throw [him] face first to the ground." Anderson does not state that he was in fact thrown to the ground, and all of the photographs he submitted show Anderson standing upright. The photographs further show that both officers grabbed Anderson and pulled him by his arms, pushed him against the patrol car and, after removing his gorilla gloves, pulled his arms behind his back to handcuff him. The kind of force Anderson described and the photographs depicted constituted only de minimis force.[7] See Nolin, 207 F.3d at 1258 (concluding only de minimis force was used when officer grabbed plaintiff, shoved him a few feet against a vehicle, pushed his knee into plaintiff's back, pushed plaintiff's head against the van, searched plaintiff's groin area in an uncomfortable manner and placed plaintiff in handcuffs, all resulting in only minor bruising). Because Anderson failed to show an objectively unreasonable application of force, Officer Anthony was entitled to qualified immunity with respect to the Fourth Amendment excessive force claim.[8]

---

[7]We reject Anderson's claim that his temporary back strain was more than a minor injury. The only treatment Anderson received was prescriptions for Tylenol, Anaprox and Flexeril, common treatments for muscle pain. The jail nurse indicated that Anderson's back pain required no referral, and the emergency room doctor expected Anderson's back to improve within a week.

[8]As previously noted, Anderson's brief did not offer any substantive legal argument as to his Fourteenth Amendment post-arrest claim that Officer Anthony left him in a hot patrol car and, thus, he abandoned this claim. We note, however, that even construing the facts in

17

## C.    Motion in Limine

Anderson filed a motion in limine seeking to exclude the deposition testimony of Tonicia Morgan, one of the event attendees.  Anderson claimed Morgan had committed perjury and submitted an audio statement Morgan previously had given to police.  We cannot say the district court abused its discretion when it denied Anderson's motion in limine as moot.  Morgan's deposition testimony about Anderson's disruptive behavior was largely cumulative of other eyewitness testimony, and the minor portions of Morgan's testimony that Anderson claims conflicted with her prior police statement were immaterial to the resolution of the summary judgment motion.

## III.  CONCLUSION

For all these reasons, we affirm the district court's grant of summary judgment in favor of Officer Anthony and the City of Naples on all of Anderson's § 1983 claims.

**AFFIRMED.**

---

Anderson's favor, he did not show the kind of extreme conduct that amounts to a Fourteenth Amendment violation.  At most, Anderson was in the patrol car for thirty-two minutes (from the time of arrest at 12:27 p.m. until the time of booking at 12:59 p.m.).  Anderson alleged he was not booked into the jail until 3:00 p.m.  But, the document he cited to support this proposition was a police operations report, not a jail report as to when Anderson was brought into the jail.  In any event, Anderson did not produce evidence that he suffered any injury as a result of being in the car.