[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 28 2000
THOMAS K. KAHN
CLERK

_____

No. 99-10040

_____

D. C. Docket No. 98-01561-CV-BU-S

NATHAN NOLIN,

Plaintiff-Appellee,

versus

CHRISTOPHER ISBELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 28, 2000)**

Before BLACK, Circuit Judge, GODBOLD and FAY, Senior Circuit Judges.

BLACK, Circuit Judge:

Appellee Nathan Nolin filed a complaint against Appellant Officer Christopher Isbell and other defendants not involved in this appeal. The complaint alleged that Appellant violated 42 U.S.C. § 1983 and Alabama law because he unlawfully arrested and detained Appellee and used excessive force in effectuating Appellee's arrest. Appellant contends the district court erred in denying his request for summary judgment based on qualified and discretionary immunity or the failure to establish a constitutional violation. We agree the district court erred and reverse in part.

## I. BACKGROUND

On May 10, 1997, Appellee, then 17 years old, assisted his friends in erecting and disassembling band equipment during the May Day festival in Springville, Alabama. During the disassembly, Appellee began wrestling with a friend, Shawn Pedee. At one point, Appellee landed on top of Pedee on a friend's car and dragged Pedee by the leg to the ground. A bystander instructed them to stop roughhousing and they did so, apparently to return to work.

Meanwhile, Appellant Officer Isbell and Chief Black were dining in the Springville Café. A waitress in the restaurant saw the commotion and shouted "fight." Appellant and Chief Black saw Appellee and Pedee struggling in the parking lot. They witnessed the two fall onto the hood of a car and observed

2

Appellee drag Pedee to the ground. Appellant and Chief Black ran out to the parking lot where Appellant arrested Appellee.

The crux of the dispute centers around Appellant's use of force in arresting Appellee. Appellee claims Appellant grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him. Appellee maintains he suffered bruising to his forehead, chest, and wrists, although he admits the bruises disappeared quickly and he did not seek medical treatment.

## II. DISCUSSION

Appellant argues the district court erred in denying his motion for summary judgment. Appellant based his motion on the premise that the application of de minimis force during an arrest does not, as a matter of law, constitute excessive force and on the related theories of qualified and discretionary immunity. We may exercise jurisdiction over all of these arguments. *See Sheth v. Webster*, 145 F.3d 1231, 1235-36 (11th Cir. 1998). In *Sheth*, this Court explained that it has jurisdiction to consider an appeal from a denial of qualified immunity because the "issues appealed . . . concern 'not which facts the parties might be able to prove, but, rather, whether or not certain given facts show[] a violation of 'clearly

established' law.'" *Id.* at 1236 (quoting *Johnson v. Jones*, 515 U.S. 304, 311, 115

S. Ct. 2151, 2155 (1995)).  In this case, like *Sheth*, Appellant accepts Appellee's

version of the events and argues those facts do not demonstrate a violation of

clearly established law.[1]  This Court conducts a de novo review of qualified

immunity rulings and resolves all issues of material fact in favor of the plaintiff.

*See Sheth*, 145 F.3d at 1236.

A.    42 U.S.C. § 1983 – Excessive Force

Appellant argues the district court erred in denying his motion for

summary judgment based on qualified immunity.  Qualified immunity protects

from civil liability government officials who perform discretionary functions if the

conduct of the officials does not violate "clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  This Court has

explained that when applied in excessive force cases, "qualified immunity applies

unless application of the standard would inevitably lead every reasonable officer in

[the position of the defendant officer] to conclude the force was unlawful." *Post v.*

---

[1] *Sheth* also establishes our ability to exercise jurisdiction over Appellant's challenge to the denial of discretionary function immunity with respect to Appellee's state law claims.  The *Sheth* Court decided, as a matter of first impression, that an Appellant may take an interlocutory appeal from the denial of discretionary function immunity under Alabama law. *See Sheth*, 145 F.3d at 1236.

*City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified* 14 F.3d 583 (11th Cir. 1994).

Appellant contends he used an amount of force insufficient as a matter of law to support an excessive force claim even under Appellee's version of the events. This Court routinely applied the principle of de minimis force before the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989).[2] *See Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986); *Byrd v. Clark*, 783 F.2d 1002, 1006 (11th Cir. 1986); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500-01 (11th Cir. 1985) (en banc). At least three cases from this Court

---

[2] *Graham v. Connor* primarily stands for the proposition that a § 1983 claim based on excessive force in the context of an "arrest or investigatory stop of a free citizen" arises from the Fourth Amendment. 490 U.S. at 394, 109 S. Ct. at 1871. After the Court announced that the right stems from the Fourth Amendment, not the Due Process Clause or the Eighth Amendment, the Court held that the subjective intent of an officer does not affect the existence of a Fourth Amendment violation. *See id.* at 397, 109 S. Ct. at 1872-73 (explaining that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional"). In reaching this conclusion, the Supreme Court rejected the fourth part of a four-part test that many Courts of Appeal, including this Court, had used in analyzing excessive force claims: the consideration of whether the officer acted in good faith or maliciously and sadistically. *See id.*

The *Graham* Court did not establish a precise test for identifying excessive force but announced that the test looked to reasonableness and that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97, 109 S. Ct. at 1872. The Court advised that the proper application of the reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S. Ct. at 1872.

5

have used the principle of de minimis force since *Graham* in reversing a district court's denial of qualified immunity to police officers. *See Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997); *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997); *Post*, 7 F.3d at 1552. In the earliest of the post-*Graham* cases, *Post*, the officer, who sought to arrest the plaintiff for a building code violation, pushed the plaintiff against a wall and applied a choke-hold before placing the plaintiff in handcuffs – all despite the fact that the plaintiff did not resist. This Court concluded that

> [o]nce [the plaintiff] was handcuffed and taken outside, no further force was needed. But, even though pushing [the plaintiff] against the wall might have been unnecessary, this pushing was not plainly unlawful. When [the officer] acted, the case law on excessive force looked to, among other things, the need for force, the amount of force used, and the injury inflicted. That the amount of force [the officer] used, even if unnecessary, was enough to violate the law was not plain; reasonable doubt existed, and still exists, on whether this amount of unnecessary force was unlawful.

7 F.3d at 1559-60 (citations omitted).

In *Gold*, the defendant officer arrested the plaintiff for disorderly conduct, which consisted mainly of disrespectful comments to the officer, and placed him in handcuffs. The plaintiff complained that the officer had applied the handcuffs too tightly and had refused to loosen them for more than twenty minutes. In granting qualified immunity to the officer, this Court stated that

6

> the facts viewed in the light most favorable to [the plaintiff] show that [the plaintiff] experienced pain from the handcuffs for roughly twenty minutes and that [the plaintiff] suffered only skin abrasions for which he did not seek medical treatment. The minor nature of this injury reflects that minimal force was used to apply the handcuffs. Certainly, these circumstances would not 'inevitably lead' a reasonable officer in the officers' positions to conclude that the force used to apply the handcuffs was unlawful.

121 F.3d at 1446-47.

Finally, in *Jones*, the officer "slammed" the plaintiff against a wall, "kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants." 121 F.3d at 1460. This led the plaintiff to experience "pain from having to lift his arms since he had previously suffered a stroke," and "pain in his arthritic knee from having his legs kicked apart." *Id.* In addition, the plaintiff later received minor medical treatment for the pain in his knee. Nevertheless, the *Jones* Court determined, relying on *Post*, that qualified immunity shielded the officers because while "the use of force against [the plaintiff] may have been unnecessary, the actual force used and the injury inflicted were both minor in nature. Given such variables, the application of the excessive force standard would not inevitably lead an official in [the defendant officers'] position to conclude that the force was unlawful." *Id.* at 1460-61.

7

From the foregoing cases, we conclude this Circuit has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment. The district court disagreed, determining it should ignore the binding authority of three separate opinions of this Court based on its view that those opinions failed to follow an earlier, controlling case. In doing so, the district court erred in rejecting the de minimis force principle as merely "a holdover from the Eleventh Circuit's pre-*Graham* caselaw," *Nolin v. Town of Springville*, 45 F. Supp. 2d 894, 903 (N.D. Ala. 1999), despite the repeated, post-*Graham* application of the principle by this Court. The earlier case, relied on by the district court, did not reject the de minimis force principle and the three recent opinions are controlling.

The district court believed that an opinion of this Court in the wake of *Graham*, *Ortega v. Schramm*, 922 F.2d 684 (11th Cir. 1991), foreclosed a de minimis force principle. In *Ortega*, the police, based on a tip, went to a gas station and observed suspicious behavior. Without identifying themselves as officers or explaining their presence, the police demanded that the plaintiffs open the station door. When the plaintiffs did not do so, officer Schramm used a shotgun to shoot the padlock off the door. Schramm then searched the premises and found nothing. At some point, one officer pushed or kicked one of the plaintiffs. The police then

8

arrested all three plaintiffs and took them to the Sheriff's office. *See Ortega*, 922 F.2d at 687. The *Ortega* Court noted that the right to make an arrest carries with it the right to use some physical coercion or threat and quoted the *Graham* reasonableness analysis. *See id.* at 695. This Court then concluded the evidence supported the plaintiffs' claims that the officers conducted an unreasonable search and used excessive force. The Court stated that "[o]verall, the manner in which the warrantless search was conducted, where plaintiffs were held at gunpoint throughout and never told of the reason for the intrusion, provides ample support for the jury's finding of excessive force." *Id.* at 696.

The district court maintained that *Ortega* foreclosed future reliance on a de minimis force principle because the officers in *Ortega* used little force and this Court upheld a jury verdict in favor of the plaintiffs. We conclude the district court created tension where none existed. The *Ortega* Court merely recited the factors mentioned by the Supreme Court in *Graham* and never considered a de minimis force principle. The *Ortega* opinion does not address the issue of whether the force used was de minimis. Perhaps the *Ortega* Court concluded the amount of force used, which included kicking and pointing weapons, rose above a certain level; perhaps the parties, in the early stages of the development of the *Graham* standard, did not raise the issue; or perhaps, most likely, the Court relied on the

9

notion that the police illegally performed the initial search and arrest such that the use of any force was unlawful. For whatever reason, the *Ortega* Court did not reach, much less decide, the idea of a de minimis force principle. It merely cited the Supreme Court's embryonic formulation of what the reasonableness determination should "include," not to what it should be limited. *See Graham v. Connor*, 490 U.S. at 397, 109 S. Ct. at 1872.[3]

Appellee asserts two other cases demonstrate this Court does not embrace a de minimis force principle. *See Sheth*, 145 F.3d at 1238; *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998). *Thornton* concerned false arrest and excessive force claims against a number of officers. The plaintiff repeatedly had asked the police to leave his property. Instead, the police lied to the plaintiff to get him to open the screen door to his apartment. Then, without a warrant or probable cause, the officers grabbed the plaintiff on his arms and around his neck, threw the plaintiff to the floor, handcuffed him, picked him up by his arms, and dragged him outside to throw him into a police car. *See Thornton*, 132 F.3d at 1398. This Court

---

[3] We reject the district court's suggestion that we should disregard *Post* because it relied on the pre-*Graham* case of *Leslie v. Ingram*, 786 F.2d 1533 (11th Cir. 1986). The district court correctly noted that *Leslie* included the now-superceded four-part test for excessive force claims. *Post* and its progeny, however, did not rely on the invalidated subjective element of the *Leslie* four-part test in reaching their results. Instead, *Post* refined *Graham* by concluding that in making the highly fact-intensive excessive force inquiry, a court may conclude that an officer retains qualified immunity when the facts show a minimal amount of force combined with a minor or nonexistent injury.

concluded that "[u]nder the circumstances, the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive." *Id.* at 1400. In *Sheth*, the officer also arrested the plaintiff without probable cause. He then "pushed her against a soda machine, handcuffed her, and dragged her to the police car." 145 F.3d at 1238. The *Sheth* Court affirmed the denial of qualified immunity and stated that "because of the absence of any justification for [the officer's] use of force, application of the Fourth Amendment reasonableness standard 'would inevitably lead every reasonable officer . . . to conclude that the force was unlawful.'" *Id.* (citing *Post*, 7 F.3d at 1559).

Both *Thornton* and *Sheth* involved more force than Appellant used in this case. More tellingly, however, both cases also involved arrests without probable cause in which any use of force was inappropriate. This fact distinguishes those cases from *Post* and its progeny. In fact, *Sheth* explicitly recognized the validity of *Post*, *Gold*, and *Jones* and distinguished its factual setting to bring the case within *Ortega*. *See Sheth*, 145 F.3d at 1238.

In short, the district court misinterpreted the cases of this Court by concluding that *Ortega* foreclosed a de minimis force principle. We again hold, as we did in a line of cases beginning with *Post*, that a minimal amount of force and

injury, as present in the facts of this case,[4] will not defeat an officer's qualified immunity in an excessive force case.

B.      State Law Claims

The district court declined to dismiss Appellee's state law tort claims for assault and battery and false imprisonment. At the time the district court made this decision it believed that federal jurisdiction remained. At this time, the case retains no independent basis for federal jurisdiction and the only claims that remain deal with complex questions of discretionary function immunity in the state of Alabama. A proper resolution of the two state law causes of action will require a careful analysis of Alabama law – something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake in this sensitive area. We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

---

[4] As described above, Appellant, pursuant to what the district court found to be a lawful arrest, merely grabbed Appellee and shoved him a few feet against a vehicle, pushed Appellant's knee into Appellee's back and Appellee's head against the van, searched Appellee's groin area in an uncomfortable manner, and placed Appellee in handcuffs. Appellee had minor bruising which quickly disappeared without treatment. This factual recitation by Appellee falls well within the ambit of the de minimis force principle of *Post*, *Gold*, and *Jones*. In fact, the facts sound little different from the minimal amount of force and injury involved in a typical arrest.

12

## III. CONCLUSION

Appellee's allegations failed to support a claim for excessive force and the district court erroneously rejected the de minimis force principle expressed in the cases of this Court. Accordingly, the district court erred in denying Appellant's motion for summary judgment. In light of the complicated issues of purely state law that remain, the district court should dismiss the state law claims.

REVERSED IN PART AND REMANDED.