[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15074
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-14375-DLG

ALLISON LANDSMAN,

Plaintiff-Appellee,

versus

CITY OF VERO BEACH,
a political subdivision, et al.,

Defendants,

OFFICER FLETCHER MCCLELLAN,
in his individual capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 10, 2015)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Fletcher McClellan, a police officer with the City of Vero Beach, Florida (the City), appeals the district court's order denying McClellan qualified immunity with regard to claims brought against McClellan in his individual capacity by Allison Landsman, an individual, in Landsman's 42 U.S.C. § 1983 suit against the City, the former and current police chiefs for the City, and McClellan (collectively, Defendants).

Landsman filed suit against Defendants for injuries sustained when McClellan used force—specifically, a "modified arm-bar takedown"—to detain her on suspicion of driving under the influence and a possible hit-and-run. Landsman alleged that, as a result of McClellan's alleged physical assault (the details of which she cannot recall), she suffered severe injuries to her face and head. Landsman subsequently brought claims for excessive force and state law battery against McClellan. McClellan contended that he used only that force necessary to take Landsman into custody. The parties eventually filed cross motions for summary judgment, with McClellan moving for summary judgment on the basis of qualified immunity.[1]

---

[1] The other parties' motions for summary judgment and the district court's decisions on those motions are not before us.

2

In an amended order, the district court denied McClellan's motion. The court summarized each party's version of the facts before addressing the two claims against McClellan. The district court concluded that "the existence of genuine issues of material facts, regarding the nature and extent of force that was used, and the necessity for using it," precluded summary judgment on Landsman's excessive force claim. According to the court, "a reasonable jury could find that, given the circumstances and resulting injuries, McClellan's use of the arm bar maneuver to subdue Landsman was excessive."

McClellan appeals the district court's order, arguing again that he used only that force necessary to take Landsman into custody and that the law had not clearly established at the time of the incident that such force was excessive. Having carefully reviewed the parties' briefs and the record on appeal, we agree with the district court and affirm its denial of McClellan's motion for summary judgment for the reasons set forth below.

## I.

As an initial matter, we note that a district court's order denying a defendant's motion for summary judgment on qualified immunity grounds is immediately appealable despite there being disputed issues of fact, *unless* the only issue on appeal is the "sufficiency of the evidence relative to a predicate factual element of the underlying constitutional tort." *Koch v. Rugg*, 221 F.3d 1283, 1296

(11th Cir. 2000) (internal quotation marks omitted).  "[T]he Supreme Court . . . narrowly defined the proscribed class of cases as those where a defendant merely contests the merits of the plaintiff's underlying action."  *Bryant v. Jones*, 575 F.3d 1281, 1294 n.19 (11th Cir. 2009).  We are not presented with such a case.  McClellan advances an appealable issue—namely, whether his use of the arm-bar takedown violated Landsman's clearly established rights.  Accordingly, we have jurisdiction to review the district court's legal determination that McClellan is not entitled to qualified immunity, even though the district court noted that material issues of fact remain.[2]  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1484–85 (11th Cir. 1996).

## II.

There are a number of facts in dispute due, in no small part, to Landsman's inability to recall the specifics of her arrest.  However, "[i]n conducting de novo review of the district court's disposition of a summary judgment motion based on qualified immunity," we, like the district court, "are required to resolve all issues of material fact in favor of the plaintiff."  *Lee v. Ferraro*, 284 F.3d 1188, 1190

---

[2] Whether McClellan is entitled to qualified immunity for his alleged use of excessive force is an inquiry distinct from the merits of Landsman's excessive force claims.  *See Saucier v. Katz*, 533 U.S. 194, 204–06, 121 S. Ct. 2151, 2158–59 (2001) ("The inquiries for qualified immunity and excessive force remain distinct . . . ."), *receded from on other grounds by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009).  Still, "in the course of deciding an interlocutory appeal, we have authority to decide those evidentiary sufficiency issues that are part and parcel of the core qualified immunity issues."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).

(11th Cir. 2002). "[W]e approach the facts from the plaintiff's perspective because the issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Id.* (internal quotation marks omitted). Under this standard, the record supports the following factual account.

On the night in question, McClellan responded to a report of a hit-and-run accident involving a car that had backed into a light post in a residential community. A bystander gave McClellan a description of the car involved and its license plate number. The car was registered to Landsman. Another officer, Craig Urbanczyk, heard the report over the radio. Hoping to locate the car involved, Urbanczyk drove towards Landsman's known address. While en route, Urbanczyk observed a car driving erratically, which car had noticeable rear-bumper damage commensurate with the reported hit-and-run. The license plate number on the car was a match, and Landsman was the driver. Urbanczyk followed Landsman into her apartment complex and, once clear of the complex's security gate, Urbanczyk activated his emergency lights.

Landsman pulled over inside the complex, and Urbanczyk approached her car. When Landsman lowered her window, Urbanczyk noticed the smell of

alcohol.[3]  Urbanczyk asked Landsman if she was alright and informed her that other officers were on their way.  Landsman told Urbanczyk that she needed to go home to use the bathroom.  McClellan then arrived on the scene, parking his vehicle behind Landsman's car.  While Urbanczyk and McClellan conversed, Landsman rolled up her window, pulled away "slowly," and drove further into the complex towards her apartment.  According to Landsman, Urbanczyk never told her why she was pulled over and neither officer told her that she could not leave after she was initially stopped.[4]  McClellan followed in his vehicle, and Urbanczyk gave chase on foot.  Landsman parked her car and proceeded to her apartment.

Landsman recalls walking to the front door of her apartment and attempting to put her key in the lock.  She states that she was unaware that she was being pursued, while McClellan contends that he yelled at Landsman to stop.  Landsman remembers feeling someone "pull on her shoulders," and her next recollection is waking up in a hospital emergency room.  She cannot remember any other details of the incident.  McClellan states that Landsman shrugged his hands off of her shoulders while attempting to enter her apartment, leading McClellan, who is 6'1,

---

[3] Landsman does not challenge the constitutionality of the charges subsequently filed against her, which include driving under the influence and leaving the scene of a hit-and-run with minor property damage.

[4] There is some dispute between the parties as to whether Urbanczyk informed Landsman that she was not free to leave until instructed to do so.  However, at this stage in the proceedings, we "are required to resolve all issues of material fact in favor of [Landsman]," *Lee*, 284 F.3d at 1190, and she asserts that she was not informed as to why she was stopped and was not told that she was not free to leave.

to perform a modified arm-bar takedown on Landsman, who is 5'4, sending both Landsman and McClellan to the ground.

McClellan became aware of Landsman's injuries while placing an unconscious Landsman in handcuffs while she lay on the ground. Landsman was transported to a hospital, where she was diagnosed with a subarachnoid bleed, a nasal fracture, a hematoma to her left eye, an edema to the upper lip, an injury to her left ankle, a near-full thickness rotator cuff tendon tear, and small partial tears of the subscapularis tendon. Landsman continues to suffer from shoulder pain.

### III.

The doctrine of qualified immunity will protect officers engaged in discretionary functions from civil liability and from suit *so long as* the officers' actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Because McClellan was engaged in the apprehension of a possibly intoxicated subject, he was "clearly engaged in a discretionary capacity." *See Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). As such, the burden shifts to Landsman to establish that McClellan is *not* entitled to qualified immunity by showing that the facts alleged by Landsman make out a violation of a constitutional right and that the alleged

constitutional right was clearly established at the time of McClellan's conduct.  *See Hadley*, 526 F.3d at 1329.  We find that Landsman met her burden here.

The right to be free from excessive force is grounded in the Fourth Amendment.  *See Mercado*, 407 F.3d at 1156.  "Whether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing."  *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871 (1989)), *modified*, 14 F.3d 583 (11th Cir. 1994).[5]  The overarching inquiry is whether a reasonable officer in the same situation would have believed that the level of force used was necessary.  *See Mercado*, 407 F.3d at 1157.  As we have explained, "qualified immunity applies unless application of [this] standard would inevitably lead every reasonable officer in the position of the defendant officer to conclude the force was unlawful."  *Nolin*, 207 F.3d at 1255 (internal quotation marks omitted).

---

[5] In evaluating the applicability of the principle of "*de minimis* force," we look at the need for force, the relationship between the need and amount of force used, and the extent of the injury inflicted.  *See Nolin v. Isbell*, 207 F.3d 1253, 1255–57 (11th Cir. 2000); *see also Lee*, 284 F.3d at 1198 n.7 (noting only subjective prong of four-part test in *Leslie v. Ingram*, 786 F.2d 1533 (11th Cir. 1986), is invalid after *Graham*).  Here, the amount of force applied by McClellan combined with Landsman's serious and well-documented injuries foreclose any *de minimis* argument by McClellan.  *Cf. Nolin*, 207 F.3d at 1255, 1258 & n.4 ("Appellee had minor bruising which quickly disappeared without treatment."); *Post*, 7 F.3d at 1559–60 ("[The arrestee] was in a choke hold for about 'five seconds' and . . . sought no medical treatment until almost three years after the arrest.").

McClellan contends that he used only that force necessary to take Landsman into custody. "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). But "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force," *Lee*, 284 F.3d at 1198, and that reasonable proportionality is missing here. First, the amount of force employed by McClellan does not mirror the offense for which McClellan was stopped—namely, backing into a wall at a condominium complex. *See id.* Second, it is abundantly clear from the record that Landsman did not pose an immediate threat of serious harm to McClellan or to anyone else. Finally, when the facts are construed in the light most favorable to Landsman, there is no indication that Landsman "actively resisted or attempted to flee." *See id.* On this record, we agree with the district court that a reasonable jury could find McClellan's use of force "unnecessary and disproportionate," *id.*, and thus excessive. *See, e.g.*, *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

We next ask whether McClellan "is nonetheless entitled to qualified immunity on the ground that the law had not clearly established at the time of the incident that such force was excessive." *Lee*, 284 F.3d at 1198. There are three ways in which a plaintiff can show that a right is clearly established: "(1) case law

9

with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; *or* (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (emphasis added) (citations omitted).  As noted above, qualified immunity will apply "unless application of the standard would inevitably lead every reasonable officer in [McClellan's position] to conclude the force was unlawful." *Nolin*, 207 F.3d at 1255 (internal quotation marks omitted).

There is a broad statement of principle ensconced in our case law that clearly establishes that the use of force against an arrestee who, *inter alia*, is not a threat, has not exhibited aggressive behavior, and has not actively resisted arrest is excessive.  *See Lee*, 284 F.3d at 1198–1200; *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000).[6]  Such are the facts of the instant case.  The officers did not inform Landsman as to why she was stopped and never told her that she was not free to leave.  In line with her statement to Urbanczyk that she needed to go home to the bathroom, she simply left the officers, drove to her apartment, parked her car, and headed to her front door.  Landsman was neither

---

[6] *See also Smith v. Mattox*, 127 F.3d 1416, 1418, 1420 (11th Cir. 1997) (per curiam) (denying qualified immunity to officer who broke arm of individual who "docilely submitted" to request to "get down," even though individual had previously resisted (internal quotation marks omitted)).

10

agitated nor uncooperative; she was neither physically nor verbally aggressive; she did not attempt to flee the apartment complex; and she did not drive away from the officers quickly. Given the lack of any sort of threat, physical aggression, or manifest resistance on Landsman's part, "no reasonable officer could have had a mistaken understanding as to whether the particular amount of force was legal in the circumstances." *Lee*, 284 F.3d at 1200 (internal quotation marks omitted).

On this record, Landsman carries the day. This does not mean, however, that McClellan will not ultimately be entitled to immunity. The jury's subsequent findings as to the nature and extent of McClellan's use of force may lead the district court to revisit the issue of whether such force was "patently unreasonable." *Smith*, 127 F.3d at 1420 (citing *Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir. 1992) (per curiam) (noting that district court may grant qualified immunity based on jury's fact-findings following a full trial)). But *we* cannot, within the bounds of summary judgment review, hold as a matter of law that the force used by McClellan against Landsman was not obviously unreasonable. *See id.* Therefore, the district court's order denying McClellan's motion for summary judgment is **AFFIRMED**.