[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12276
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00148-RH-GRJ

YVELAN PIERRE,

Plaintiff-Appellant,

versus

D. PADGETT,
Department of Corrections Officer,
J. SLAUGHTER,
Department of Corrections Officer,
J. LAHR,
Department of Corrections Officer,
SADLER,
Department of Corrections Officer,
FREEMAN,
Department of Corrections Officer, et al.,

Defendants-Appellees,

CLAY,
Department of Corrections Officer,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 3, 2020)

Before JILL PRYOR, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Proceeding *pro se*, Plaintiff Yvelan Pierre, an inmate incarcerated with the Florida Department of Corrections, filed a 42 U.S.C. § 1983 excessive-force case against several correctional officers ("Defendants"), alleging that they beat him up and pepper-sprayed him while he was shackled.  Concluding that Plaintiff's evidence established no more than a *de minimis* physical injury under the Prison Litigation Reform Act ("PLRA"), the district court granted partial summary judgment to Defendants on Plaintiff's claims for compensatory and punitive damages.  The court then held a bench trial on Plaintiff's nominal-damages claim. At the end of the trial, the court found in favor of Defendants, ruling that they had not violated Plaintiff's constitutional rights and were entitled to qualified immunity in any event.  Plaintiff challenges those rulings on appeal.  After careful consideration, we affirm.

## I.    BACKGROUND

Plaintiff filed a verified complaint against six correctional officers from Taylor Correctional Institution (Sergeant Sadler, and Officers D. Padgett, D. Slaughter, J. Lahr, Matthew Coulliette, and Freeman),[1] claiming that they had violated his First, Eighth, and Fourteenth Amendment rights by using excessive force against him in retaliation for his filing of grievances.[2]  He alleged that, after filing a Staff-Abuse Report, he was scheduled to be transferred from Taylor Correctional Institution to another correctional facility.  In preparation for his transfer, Defendants placed Plaintiff in ankle shackles and handcuffs secured by a black box.  Then, according to Plaintiff, Officers Clay and Slaughter threatened that:  "You think this is over don't you?  Well we got something for you, we're going to beat your ass."  Plaintiff alleged that Officers Lahr, Slaughter, and Freeman attacked him without provocation during the transfer, hitting the back of his head, dropping him to the ground, and then punching, kicking, dragging, and pepper-spraying him while he was down.  Plaintiff further alleged that Sergeant Sadler and Officer Coulliette joined in the beating, and that Officer Padgett brought a camera but was told by Sergeant Sadler to wait until the beating was done before recording.  Finally, Plaintiff alleged that Defendants addressed him

---

[1]  Plaintiff's complaint erroneously identified Officer Coulliette as "Officer Clay."  The error was corrected after Plaintiff discovered "Officer Clay's" real name.

[2]  Plaintiff is an inmate serving a life sentence.

using a racial slur, and that Sergeant Sadler had said, "I told you we was going to get you.  I told you I would have the last say."  As a result of the incident, Plaintiff claimed that he had suffered "emotional stress, duress, and mental anguish."  He sought $30 million in compensatory damages and $10 million in punitive damages.

After discovery, Defendants moved for summary judgment, arguing in relevant part that Plaintiff was not entitled to compensatory or punitive damages because he had not suffered a "physical injury" within the meaning of the PLRA, and that he could not recover nominal damages because his complaint did not request such relief.  Plaintiff opposed the motion, attaching his Post-Use-of-Force-Exam Record, which noted that Plaintiff had several abrasions, some bruising, a small amount of blood in his right nostril, two small nodules over and behind his right ear, and some redness and burning on his face caused by a chemical agent. The exam record also noted that Plaintiff had complained of pain in his lower back and neck, but that there was no redness, bruising, swelling, or deformity.

A magistrate judge prepared a Report and Recommendation ("R&R"), recommending that the district court grant Defendants' motion for summary judgment as to compensatory and punitive damages, but not as to nominal damages.  The magistrate judge reasoned that the PLRA precluded claims for compensatory and punitive damages absent a showing of more than a *de minimis* physical injury, and that Plaintiff's injuries, which did not require medical

4

treatment and included only scratches, abrasions, and some minor bruising, did not meet that standard.[3]  Reading Plaintiff's filings liberally, however, the magistrate judge concluded that he had requested nominal damages.  Plaintiff did not timely object to the R&R, and the district court adopted the magistrate judge's recommendations.

Plaintiff then moved for reconsideration, attaching belated objections to the R&R.  He argued that establishing excessive force under the Eighth Amendment did not require a showing of more than a *de minimis* physical injury, and that his injuries were more than *de minimis* in any event.  On March 22, 2017, the court granted Plaintiff's motion for reconsideration, considered his untimely objections, and adhered to its prior ruling.  The court noted that, although *force* rather than *injury* was the relevant factor for an Eighth Amendment claim, the PLRA prohibited prisoners from recovering damages absent a showing of a more than *de minimis* physical injury.  As for the significance of Plaintiff's injuries, the court readopted the magistrate judge's determination that they were no more than *de minimis*.

---

[3] *See Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) ("Under the [PLRA] and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury.").

After the court issued an order directing the clerk to seek *pro bono* counsel to represent Plaintiff in his trial for nominal damages,[4] Plaintiff moved to strike or correct the court's order, arguing that he should be permitted to seek compensatory and punitive damages at trial.  On November 28, 2017, the court denied Plaintiff's motion to strike, noting that it had already ruled that he could only seek nominal damages.

Because no right to a jury trial attaches to a claim for nominal damages, the district court issued an order stating that it would hold a bench trial.  Plaintiff did not object to that order, but did file a separate motion to stay the proceedings pending an interlocutory appeal, arguing that the court's ruling on damages had denied him his Seventh Amendment right to a jury trial.  The court denied the motion.  At the conclusion of the bench trial, the court found in favor of Defendants, concluding that Plaintiff had failed to prove a constitutional violation and that, in any event, the officers were entitled to qualified immunity due to the absence of clearly established law prohibiting their conduct.

On March 22, 2018, the court entered judgment in favor of Defendants. Plaintiff then moved to alter or amend the judgment or for a new trial, arguing, among other things, that the court erred in concluding that he could recover only

---

[4]  As Plaintiff represented himself at trial *pro se*, we assume that *pro bono* counsel was not available.

nominal damages, and that the court's factual findings at trial were against the great weight of evidence. On April 30, 2018, the district court denied the motion to alter or amend the judgment or for a new trial.

Plaintiff filed a notice of appeal on May 31, 2018. The notice specified that he was appealing from (1) "the order denying Plaintiff[']s motion to strike and correct court order November 28, 2017," (2) "the [final] judgment rendered in favor of all the Defendants March 22, 2018," and (3) "the order denying [P]laintiff[']s motion for new trial and [to] alter or amend the judgment April 30, 2018." We appointed counsel to represent Plaintiff before this Court.

## II.    DISCUSSION

On appeal, Plaintiff raises two arguments. First, he contends that the district court erred in granting Defendants partial summary judgment on his claims for compensatory and punitive damages. Second, he argues that the district court erred in entering judgment for Defendants after a bench trial because the record did not support the court's findings of fact. After considering a jurisdictional issue raised by Defendants, we address each of Plaintiff's arguments. We discern no error below, and therefore affirm the district court's rulings.

### A.    Jurisdiction

As an initial matter, Defendants argue that we lack jurisdiction to review the district court's summary judgment ruling that Plaintiff could not recover

compensatory or punitive damages because Plaintiff's notice of appeal did not reflect an intent to appeal that ruling.  We disagree.  "[A]n appellate court has jurisdiction to review only those judgments, orders or portions thereof which are specified in an appellant's notice of appeal." *Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1271 (11th Cir. 2013) (quotation marks omitted).  Generally, "we will not expand [a notice of appeal] to include judgments and orders not specified unless the overriding intent to appeal these orders is readily apparent on the face of the notice." *Id.* (quotation marks omitted).  However, "we always construe *pro se* pleadings liberally," and because "only a final judgment or order is appealable, the appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment." *Davila v. Gladden*, 777 F.3d 1198, 1208–09 n.5 (11th Cir. 2015) (quotation marks omitted).

Here, because Plaintiff's notice of appeal challenged "the judgment rendered in favor of all the Defendants March 22, 2018"—that is, the court's final judgment—we have jurisdiction to review prior non-final rulings that produced that judgment, including the district court's summary judgment ruling, which resulted in a bench trial rather than a jury trial. *Id.* (holding that we had jurisdiction to review a motion-to-dismiss ruling where the *pro se* plaintiff's notice of appeal did not mention the motion to dismiss but "specifically referenced 'the [final] judgment entered . . . on February 6th 2013'"); *see also Barfield v. Brierton*,

8

883 F.2d 923, 930 (11th Cir. 1989) ("The plaintiff seeks review of the entire final judgment which implicates all non-final orders preceding it, including the stay."). We therefore proceed to the merits of Plaintiff's appeal.

## B.    Summary Judgment

On summary judgment, the district court ruled that Plaintiff could not recover compensatory or punitive damages under the PLRA because the scratches, abrasions, and minor bruising he received amounted to no more than a *de minimis* physical injury. Plaintiff challenges this ruling on appeal. We discern no error and affirm the district court's grant of partial summary judgment.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review a district court's grant of summary judgment *de novo* considering all the facts and reasonable inferences in the light most favorable to the non-moving party." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

Section 1997e(e) of the PLRA provides that a prisoner may not bring a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). We have interpreted that provision as preventing a prisoner from recovering compensatory or punitive damages unless he can show that he suffered a physical injury. *Brooks v. Warden*,

9

800 F.3d 1295, 1307 (11th Cir. 2015).  Thus, absent a physical injury, a prisoner may recover only nominal damages on a successful claim.  *Id.* at 1307–08. Further, we have held that, "in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."  *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir.), *op. reinstated in relevant part on reh'g en banc,* 216 F.3d 970 (11th Cir. 2000).

In his briefing, Plaintiff confuses the requirements for recovering damages under the PLRA with the standards for proving an Eighth Amendment excessive-force claim.  Because the "core judicial inquiry" for an Eighth Amendment claim concerns "the nature of the force" rather than "the extent of the injury," it is true that a prisoner need not prove that he suffered a more than *de minimis* injury to establish an Eighth Amendment violation.  *Wilkins v. Gaddy*, 559 U.S. 34, 39–40 (2010).  But, as the district court explained, to recover compensatory and punitive damages under the PLRA, it is not enough to establish an Eighth Amendment violation.  A prisoner must also establish a "physical injury," meaning an injury that is more than *de minimis*.  42 U.S.C. § 1997e(e); *Brooks*, 800 F.3d at 1307; *Harris*, 190 F.3d at 1286.  Thus, when Plaintiff argues that the district court erred in granting Defendants partial summary judgment on damages because, "[n]o matter how minimal the ultimate injury turned out to be to [Plaintiff], the use of force against him was excessive," he misses the point.

Here, we agree with the district court that Plaintiff's physical injuries were no more than *de minimis*. He suffered only scrapes, scratches, and minor bruising or swelling. In the scheme of things, these are trivial harms, which Plaintiff happened to sustain during an altercation with correctional officers, but which are not atypical nor usually noteworthy in the ordinary course of daily life.[5] *Compare Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (concluding, in the context of a Fourth Amendment excessive-force case, that "minor bruising which quickly disappeared without treatment" was the kind of "minimal . . . injury involved in a typical arrest"), *with Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (concluding, in a Fourth Amendment excessive-force case, that "lacerations, injuries to [the plaintiff's] teeth and jaw, damage to his left eardrum, and emotional distress" were not *de minimis* injuries). Plaintiff's relatively insignificant injuries are certainly not what the PLRA had in mind when it required

---

[5] Although Plaintiff contends that being pepper-sprayed established a more than *de minimis* physical injury, the evidence presented at summary judgment did not show that the pepper spray caused any harm beyond a temporary burning sensation. Absent some additional injury other than momentary discomfort, we fail to see how the discomfort associated with being pepper-sprayed transforms the harm Plaintiff suffered into a more than *de minimis* "physical injury" any more than the discomfort caused by scratches and bruises renders those relatively trivial injuries more than *de minimis*. *C.f. McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003) (noting that "pepper spray ordinarily causes only temporary discomfort"); *cf. Danley v. Allen*, 540 F.3d 1298, 1308 (11th Cir. 2008) ("Any injuries or discomfort Danley suffered as a necessary result of a dose of pepper spray were neither substantial nor long lasting."), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Notably, the record does not suggest that Plaintiff required medical treatment to address any minimal harm caused by the pepper spray.

11

the existence of a "physical injury" as a prerequisite for filing a lawsuit for "mental or emotional injury suffered."  42 U.S.C. § 1997e(e); *see Harris*, 190 F.3d at 1286 (noting that "Congress was clearly trying to preclude some part of the litigation routinely pursued by prison inmates from being brought," and that "allowing prisoners to surmount this new statutory hurdle with purely trivial allegations of physical injury would make no sense").  Indeed, it is undisputed that Plaintiff healed without the need for any medical treatment, which explains why he only sought damages for "emotional stress, duress, and mental anguish."

Accordingly, the district court did not err in ruling on summary judgment that Plaintiff failed to establish a "physical injury" under the PLRA, and thus that he could not recover compensatory or punitive damages.  *Brooks*, 800 F.3d at 1307.

## C.    Bench Trial

As noted, the district court conducted a bench trial to determine whether the Defendants had used excessive force in violation of Plaintiff's constitutional rights. The court concluded that Plaintiff had failed to prove that the force used by the defendant officers was constitutionally excessive.  On appeal, Plaintiff contends that the district court erred in reaching this conclusion.  We disagree.  Following a bench trial, we review the district court's factual findings for clear error and its conclusions of law *de novo*.  *Renteria-Marin v. Ag-Mart Produce, Inc.*, 537 F.3d

12

1321, 1324 (11th Cir. 2008).  "We will not find clear error unless our review of the record leaves us with the definite and firm conviction that a mistake has been committed."  *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018) (quotation marks omitted).

"Under the Eighth Amendment, force is deemed legitimate in a custodial setting if it is 'applied in a good-faith effort to maintain or restore discipline' and not 'maliciously and sadistically to cause harm.'"  *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  "To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including:  'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'"  *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Hudson*, 503 U.S. at 7).  "Not only that, but we must also give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance."  *Sears*, 922 F.3d at 1205 (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)).

In reaching its conclusion that Defendants did not use excessive force, the district court found the following facts:  In March 2011, officials at Taylor

13

Correctional Institution decided to transfer Plaintiff to another institution because he had threatened officers. On April 11, the transfer process began. While escorting Plaintiff, Officer Lahr responded to what the district court referred to as "some jawing" by non-forcibly slapping Plaintiff in the back of the head. Plaintiff then turned on Officer Lahr "with some vigor," a move that Officer Lahr perceived as an attempted head-butt. In response, Officers Lahr and Slaughter took Plaintiff to the ground. When Plaintiff refused to comply and continued to resist, Officer Lahr sprayed him with a chemical agent. Because Plaintiff continued resisting while on the ground, the court concluded that the officers acted reasonably in pepper-spraying him to restore order.

On appeal, Plaintiff concedes that "[p]epper spray is an accepted non-lethal means of controlling unruly inmates." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Nevertheless, he argues that, because there was no evidence that he was resisting or disobeying orders while on the ground, the district court erred in concluding that Defendants did not use excessive force. *See id.* at 1309 ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive.").

14

The record, however, belies Plaintiff's argument.  At trial, Officer Lahr testified that Plaintiff "continued to be combative" while on the ground, "fighting," "attempt[ing] to kick me and Officer Slaughter," and "not ceasing [his] actions." Officer Lahr further testified that Plaintiff "w[asn't] listening to what I was telling [him,]" and that "after giving [Plaintiff] several verbal orders," which he did not follow, Officer Lahr "broke the seal on [his] M-4 and applied the chemical agent to [Plaintiff's] upper torso."  Officer Slaughter offered a similar account, testifying that, after they "told [Plaintiff] to cease his actions or chemical agents [would] be applied," "Lahr broke his seal and sprayed Plaintiff," who was "very combative and [was] kicking and rolling around" on the ground.

Accordingly, the district court did not clearly err in finding that, before he was pepper-sprayed, Plaintiff had continued to actively resist even while he was on the ground.  Given that finding, the district court did not err in concluding that Officers Lahr and Slaughter reasonably applied pepper spray to restore order.  *See Danley*, 540 F.3d at 1307 ("If there were nothing before us but the initial use of pepper spray following Danley's second failure to obey Allyn's order to return to the cell, we would readily conclude that there was no Fourteenth Amendment violation.").

Even assuming that we were to determine that the efforts taken by Defendants to restrain Plaintiff constituted excessive force, Plaintiff still would not

15

prevail because Defendants would be entitled to qualified immunity.  "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted).  To show that an official who acted within the scope of his discretionary authority is not entitled to qualified immunity, a plaintiff must establish both that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (quotation marks omitted).

The district court noted that had Plaintiff been compliant once brought to ground—that is, had he ceased resisting orders and physically defying the officers—the law is clearly established that the use of pepper spray at that point would have been excessive.  Yet, having credited the testimony of the officers at the bench trial that Plaintiff had continued to kick and flail, refusing to obey the officers' directives to cease, the district court noted that there was no law clearly establishing that the use of spray at this point would have constituted excessive force.  Accordingly, qualified immunity applied.  We agree with the district court's determination on this point as well.

16

## III.  CONCLUSION

For the above reasons, we affirm the district court's grant of partial summary judgment to Defendants on damages, as well as the district court's final judgment in favor of Defendants.

**AFFIRMED.**