[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14178

Non-Argument Calendar

_____

AARON TARRIE ASHLEY, SR.,

Plaintiff-Appellant,

*versus*

KELLY BENNETT,

Defendant-Appellee,

ACE UNIT, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 3:20-cv-00144-TCB

—————————————

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Aaron Ashley, Sr., a *pro se* state prisoner, appeals the district court's order granting Officer Kelly Bennett's motion for summary judgment in Ashley's 42 U.S.C. § 1983 civil rights action. On appeal, Ashley argues that Officer Bennett used excessive force during his arrest when picking him up and placing him in a patrol vehicle, and that Officer Bennett was not entitled to qualified immunity. Notably, at the district court level, Ashley did not object to the magistrate judge's report and recommendation ("R&R"), which had recommended that the district court grant Officer Bennett's motion for summary judgment because there was no genuine issue of material fact for trial. Having received no objections, the district court adopted the magistrate judge's R&R after a careful review.

Once a magistrate judge issues an R&R, the parties may serve and file written objections to the proposed findings and recommendations within 14 days after being served with a copy of the R&R. 28 U.S.C. § 636(b)(1). A party failing to object to a magistrate judge's findings or recommendations contained in a R&R in accordance with § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. 11th Cir. R. 3-1. In the absence of a proper objection, however, we may review on appeal for plain error if necessary in the interests of justice. *Id.*

Because Ashley failed to object to the magistrate judge's R&R, he has waived his right to challenge any unobjected-to factual or legal basis underlying the district court's grant of the motion for summary judgment. Although we retain the discretion to review the merits of Ashley's appeal in the interest of justice, Ashley makes no arguments on appeal that the interests of justice compel this Court to exercise its discretion to review the merits of the district court's order.

Even if Ashley had not waived his right to challenge the district court's grant of summary judgment, we would affirm. Viewing the facts in the light most favorable to Ashley, the district court did not err in granting Officer Bennett's motion for summary judgment because he did not exercise excessive force over Ashley, and, even if he had, qualified immunity shields him from liability.

This Court reviews *de novo* the district court's grant of a motion for summary judgment. *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276-77 (11th Cir. 2001). It considers all reasonable factual inferences in the light most favorable to the non-moving party. *Id.* at 1277. Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine

factual dispute exists only where a reasonable factfinder could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). When a movant shows that there is no genuine dispute of material fact, the burden shifts to the non-moving party to show that there are facts that raise a genuine issue for a jury to decide. *Id.* Although all reasonable inferences must be drawn in favor of the non-moving party when evaluating a motion for summary judgment, "inferences based upon speculation are not reasonable." *Id.* at 1301 (quotation marks omitted). "Evidence that is merely colorable, or is not significantly probative of a disputed fact cannot satisfy a party's burden." *Id.* (quotation marks omitted). Additionally, this Court "give[s] great deference to a district court's interpretation of its local rules and review a district court's application of local rules for an abuse of discretion." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009) (quotation marks omitted). Northern District of Georgia Local Rule 56 states that the district court considers each of the movant's facts as admitted unless the respondent "directly refutes the movant's fact with concise responses supported by specific citations to evidence." N.D. Ga. L.R. 56.1(B)(2)(a)(2)(i).

The Fourth Amendment guarantees the right of persons to be free from unreasonable seizures, which encompasses the right to be free from the use of excessive force during an arrest. U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Whether the degree of force used was "reasonable" is determined

through an objective inquiry judged from the perspective of the officers at the scene, given the circumstances that they faced, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396-97. Allowances must be made for officers' split-second judgments about the amount of force necessary when the circumstances are "tense, uncertain, and rapidly evolving." *Id.* Accordingly, while "[r]econsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred," this Court will not second-guess the officers on that basis. *Carr v. Tatangelo*, 338 F.3d 1259, 1270 (11th Cir. 2003) (quotation marks omitted). Determining whether the force used was "reasonable" in a particular seizure "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotation marks omitted).

Any arrest requires some level of force, and an officer may use "a reasonable amount of force to subdue and secure" an individual. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 739-40 (11th Cir. 2010). "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257, 1258 n.4 (11th Cir. 2000) (concluding that only *de minimis* force was used when, in the

process of a lawful arrest, an officer grabbed a suspect, threw him against a car several feet away, kneed him in the back, and caused minor bruises); *see also Croom v. Balkwill*, 645 F.3d 1240, 1252-53 (11th Cir. 2011) (ruling that an officer used *de minimis* force by holding a suspect on the ground for ten minutes with a foot on her back until the area was secured); *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) (holding that an officer used *de minimis* force in forcing a suspect to the ground to handcuff him, and that, even if this force was unnecessary, it was not unlawful). "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy*, 351 F.3d at 1094. The extent of an individual's injuries is also relevant to determining whether the force that was used was excessive. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1325 (11th Cir. 2017).

Qualified immunity protects a government actor acting within his discretionary authority from civil damages unless he violated a statutory or constitutional right that was clearly established at the time the alleged violation occurred. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). After the defendant-actor has proved that he was acting within his discretionary authority, the plaintiff must show that (1) the actor violated a constitutional right and (2) the right was clearly established at the time of the incident. *Id.* This Court may decide these issues out of order. *Id.* at 273. The law may be clearly established if (1) there is a case with materially similar facts decided by the Supreme Court, the

Court of Appeals, or the highest court of the relevant state; (2) "a broader, clearly established principle should control the novel facts in this situation"; or (3) the officer's conduct was so egregious so as to obviously violate the Constitution, even without caselaw on point. *Sebastian v. Ortiz*, 918 F.3d 1301, 1310 (11th Cir. 2019) (citation omitted).

First, the district court did not err in determining that there was no genuine issue of material fact between the parties. While Ashley detailed a somewhat different factual narrative than did Officer Bennett in Ashley's unsworn statement of facts, his allegations of force, which include being "roughly seized on either of [his] elbows," "yanked up into the air from a seated position on the ground," and "dragged approximately 60 to 70 feet to the patrol vehicle" are not necessarily inconsistent with Officer Bennett's less-specific rendition of the facts. In particular, Officer Bennett's Statement of Undisputed Material Facts detailed that he assisted another officer with picking Ashley up from a seated position on the ground and placed him in the patrol car for transport, but it did not clarify how strongly he touched Ashley, how aggressively he raised him up, and how far or in what manner he moved Ashley to the patrol vehicle. Therefore, the competing narratives, on their face, are not necessarily inconsistent with each other, such that they would create a genuine issue of material fact that would preclude summary judgment. *See Kernel Records Oy*, 694 F.3d at 1300.

The district court was correct to disregard Ashley's version of events because he failed to present actual evidence to support

his alleged version of events.  Under Northern District of Georgia Local Rule 56, the district court properly considered Officer Bennett's facts as admitted because Ashley failed to support his responses with citations to evidence.    N.D. Ga.  L.R. 56.1(B)(2)(a)(2)(i).  Giving great deference to the district court's interpretation of its local rule, the district court did not abuse its discretion in applying Rule 56 and considering Officer Bennett's Statement of Undisputed Material Facts as admitted.  *Id.*; *Mann*, 588 F.3d at 1302.  As such, the undisputed facts established that Officer Bennett's only interaction was to lift Ashley from a seated position and place him in a patrol car, without using unnecessary force to do so.

Turning to Ashley's excessive-force claim and applying the *Graham* factors, Ashley's crimes, which included malice murder, felony murder, aggravated assault, armed robbery, concealing the death of another, tampering with evidence, and theft, were severe enough to warrant any minimal force required by Officer Bennett to place Ashley in the patrol vehicle after his arrest.  *Graham*, 490 U.S. at 396-97.  While Ashley no longer posed an immediate threat to the safety of the officers or others, and while he was not actively resisting or trying to evade arrest when Officer Bennett physically contacted him, the undisputed facts established that Officer Bennett's contact was limited to assisting another officer in placing Ashley in the patrol vehicle.  *Graham*, 490 U.S. at 396-97.  As stated in *Ferraro*, any arrest, which involves subsequently placing the

suspect into the patrol vehicle, requires some level of physical contact and force to secure the individual. *See Ferraro*, 284 F.3d at 1198.

Officer Bennett's use of force to place Ashley in the vehicle, even viewed in the light most favorable to Ashley, as set out in his unsworn statements in opposition to the summary-judgment motion, as "roughly seizing" his elbow, yanking him into the air, and dragging him to the patrol vehicle, was only *de minimis* force. *Nolin*, 207 F.3d at 1257. Such contact by Officer Bennett was even less egregious or aggressive than the force applied in a similar arrest situation in *Nolin*, where an officer forced the suspect against the car, kneed him in the back, and caused minor bruising, or in *Croom*, where the officer held the suspect on the ground for ten minutes with a foot on his back until the area was secured. *Nolin*, 207 F.3d at 1257; *Croom*, 645 F.3d at 1252-53. This Court held that the more forceful physical contacts in *Nolin* and *Croom* were still lawful uses of *de minimis* force during an arrest. *See Nolin*, 207 F.3d at 1257; *Croom*, 645 F.3d at 1252-53. Finally, while Ashley alleged that he suffered injuries to his shoulders and back, which are relevant when reviewing an excessive-force claim, he did not offer any medical records or documentation to support these allegations. *Stephens*, 852 F.3d at 1325. Because Officer Bennett only applied *de minimis* force and not excessive force to place Ashley into the patrol vehicle, his conduct did not violate Ashley's Fourth Amendment rights. *Durruthy*, 351 F.3d at 1094.

Next, the district court did not err in finding that Officer Bennett was shielded by qualified immunity. Ashley does not dispute that Officer Bennett was acting within his discretionary authority in performing his role during Ashley's arrest and transport, so the remaining inquiry to determine if qualified immunity shields Officer Bennett is first whether Ashley showed that Officer Bennett violated a constitutional right, and second, whether this right was clearly established at the time of the incident. *Gilmore*, 738 F.3d at 272. Even viewing the facts in the light most favorable to Ashley, the excessive-force analysis above demonstrates that Officer Bennett did not violate Ashley's constitutional rights when picking him up and placing him in the patrol vehicle because any force that Officer Bennett used was *de minimis*. *See Nolin*, 207 F.3d at 1257; *Croom*, 645 F.3d at 1252-53. Turning to the second part of the qualified-immunity inquiry, Ashley failed to cite authority with materially similar facts, a broader and clearly established principle that should apply in his situation, or facts that showed that Officer Bennett's conduct was so egregious as to violate the Constitution, even in the absence of binding caselaw. *See Sebastian*, 918 F.3d at 1310. Because Officer Bennett acted within his discretionary authority as a law enforcement officer to help lift Ashley into the patrol vehicle, and because Ashley failed to show that Officer Bennett violated a constitutional right, the district court correctly found that qualified immunity shielded Officer Bennett from any liability. *Sebastian*, 918 F.3d at 1310.

Accordingly, we affirm.

AFFIRMED.